## Michener *v.* Lewis, Appellant.

Argued January 4, 1934. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis Chapman,* for appellant.

*Thomas Raeburn White,* with him *Wayland H. Elsbree* and *Albert B. Maris,* of *White, Schnader, Maris & Clapp,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 30, 1934:

This case involves a question of contributory negligence. At 8 a. m., November 12, 1931, Charles G. Michener was standing on the pavement at the southwest corner of State Road and Morgan Avenue, Drexel Hill, waiting to take an eastbound bus on State Road. This road is thirty feet wide and runs east and west. Morgan Avenue is twenty-four feet wide and runs north and south. The bus was about thirty-two feet long and eight feet wide, and it stopped at a point near the south curb of State Road with its front end about ten feet west from the line of the western curb of Morgan Avenue. At about the same time a man named Albert H. Large, who was driving south on Morgan Avenue, came to a stop near the northwest corner of State Road and Morgan Avenue, i. e., at a point on Morgan Avenue near the State Road in-

tersection and about forty feet north of where Michener was standing. After blowing his horn to attract the attention of Michener, he signalled the latter to join him. Michener responded to the summons, and according to Large, "came out in front of the bus, probably ten or fifteen feet in front of the bus, and more to the center of State Road and looked up and down and when he started to come over, he looked again." Large said Michener "took a diagonal curve in front of the bus so as to get a clear view......and then he started over with a dog-trot ......and when he went five or six steps he was struck" by defendant's car, traveling eastward. Its speed at the time was, according to Large's estimate, forty-five to fifty miles an hour. Michener was thrown up in the air, and as he was coming down about twenty-five feet east of where he was first struck, the car hurled him around and knocked him down. It was testified that defendant's car gave no warning, and that as defendant's "heavy, dark car......hit Michener, it swerved over to the side, and the brakes locked, and the wheels scraped on the road, then he [defendant] stopped just west of the second driveway on the north side of State Road, which is about 130 or 140 feet east of Morgan Avenue." This testimony indicates that the defendant's car ran more than 150 feet after striking the deceased.

The injuries inflicted upon Michener in this accident caused his death three days later. His widow brought suit against the defendant and secured a verdict for $7,500. There was a motion made for judgment n. o. v. This was overruled and judgment was entered. Defendant appealed.

The sole question before us is whether the plaintiff's decedent was guilty of such contributory negligence as to bar recovery. "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was ex-

ercising due care": Morin v. Kreidt, 310 Pa. 90, 97, 164 A. 799. We find no evidence in the case now before us so conclusively overcoming that presumption as would have justified the court below in declaring Michener negligent as a matter of law. It is not a necessary inference that a person is guilty of contributory negligence when he crosses a street in the path of an oncoming car. It depends on the speed of the oncoming car and the distance it is away. Michener was at a regular crossing on the west side of Morgan Avenue. He was in view of the defendant while traversing seven feet after passing diagonally before the front end of the bus. The defendant testified that he was proceeding eastward on State Road at a speed of twenty miles an hour and did not see the deceased until his automobile was ten feet away from him, and that to avoid striking him, he (defendant) swerved the automobile from the middle of the road ten feet to the left, and accelerated his speed to thirty-five miles an hour. The fact that the impact of the defendant's car with the deceased was sufficient to hurl him as it did, and the further fact that defendant's car, with its brakes locked, continued a distance of at least 150 feet before it came to a stop, are evidence that defendant failed to have his car "under control," as he approached the intersection. We said in Galliano v. East Penn Electric Co., 303 Pa. 498, 154 A. 805, that "it is the duty of the driver of a street car or a motor vehicle at all times to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances." It is a fair inference that if the defendant's car was proceeding at a speed of only twenty miles an hour and had continued at this rate, the accident would not have taken place, but the defendant in exercising what he may have thought was good judgment, swerved his car to the left and accelerated its speed (according to his own testimony), to thirty-five miles an hour. Michener had no

reason to anticipate that the defendant would do either one of these two things. It was reasonable for him to anticipate that the driver of the car would reduce its speed as it approached the regular crossing instead of accelerating it.

At points near street intersections where street cars and buses stop to take on and discharge passengers, as here, drivers of motor vehicles who have due and humane regard for the safety of others, always have their cars "under control," as we defined that phrase in the case above cited. Persons who have occasion to cross the street on foot at regular street crossings know this fact and naturally assume that drivers of motor vehicles will approach these crossings cautiously and will not accelerate the speed of the cars just before they reach the intersections. Pedestrians cannot be charged with negligence because they assume that the driver of a motor vehicle will exercise due care under the circumstances and then act upon that assumption. This court said in Weiss v. Pgh. Rys. Co., 301 Pa. 539, 152 A. 674: "He [the victim] had a right to rely on the assumption that all persons will use ordinary care to protect him and the mere failure to anticipate the negligence of another does not defeat an action for the injuries sustained." In that case the victim apparently assumed that the approaching street car was going to stop at the regular stopping place but instead of doing so it accelerated its speed when the man who was presently struck was in plain view. This court held in that case that the question of decedent's contributory negligence was for the jury. In Adams v. Fields, 308 Pa. 301, 305, 162 A. 177, we cited with approval the following from 20 R. C. L., page 117, section 101: "Everyone to whom a duty is due has a right to assume that it will be performed."

It is a legitimate inference from the evidence in this case that if the defendant had exercised due care this unfortunate accident would not have taken place. The decedent's act in crossing the street at the regular cross-

ing when and as he did was obviously predicated upon the belief that the driver of the oncoming motor vehicle would not do as he actually did, to wit, change the path of his car and accelerate its speed. That the defendant was negligent just before and as he struck the decedent, the jury was amply justified in finding from the evidence. The question of the deceased's contributory negligence was for the jury.

The judgment is affirmed.