Bowers, Appellant, *v.* Gaglione.

Argued April 20, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John D. Keith,* of *Keith & Bigham,* for appellant.

*Samuel Gubin,* with him *J. Donald Swope,* for appellee.

Opinion by Mr. Justice Linn, May 25, 1936:

Harrisburg Street, a through north and south highway in the Borough of East Berlin, is crossed at right angles by York Street in the built-up portion of the borough. In the intersection* a collision between defendant's truck and plaintiff's Chevrolet coach occurred shortly after midnight February 12, 1934.

The plaintiff was very seriously injured and in this action obtained a verdict. The defendant moved (1) for a new trial, and (2) for judgment n. o. v. under the Act of 1905, P. L. 286, as amended by the Act of 1925, P. L. 221, 12 PS section 681. At the argument of the motions, defendant's counsel stated that he did not press the first motion but would rely entirely on the second. This motion was granted on the ground of plaintiff's contributory negligence and judgment for defendant was entered.

We agree that the evidence on the subject was for the jury; no complaint was made as to the manner of its submission. Harrisburg Street, the through highway, is from 35.3 feet to 36 feet wide between curbs with a macadam surface from 19.1 feet to 21.2 feet in width. York Street is 46 feet wide with a macadam surface of 20.4 feet. On the southeast corner was a hotel, on the northeast corner a bank. On this corner, on York Street, 12.5 feet from the curbline of Harrisburg Street, was a "Through Traffic Stop" sign. The center lines of these streets, to the rectangular intersection, were marked in white. At the time of the accident a very light snow was falling. Plaintiff, driving westward on York Street, came to the through street and stopped at the "Stop" sign but found that his view to his left was limited to a distance of 175 feet by the pillars of the hotel porch on

---

* "The driver of a vehicle entering a through highway or stop intersection, which has been established as such under provisions of this act, shall yield the right of way to all vehicles approaching in either direction on such through highway": Act of May 1, 1929, P. L. 905, section 1014 (c), amended by the Act of June 22, 1931, P. L. 751, section 2, 75 PS section 573.

the corner. He moved forward a short distance until he was in line with the curb and the front wheels of his car were within two feet of the macadam surface of the through street. At that point he looked again to his left and was enabled to see past the obstructions, formerly limiting his observation, with an enlarged view from 50 to 75 feet greater than from where he first stopped. The jury may have found that a slight curve in the through street, beginning about 250 feet to the left of where plaintiff made the observation just described, would interfere with seeing traffic approaching from the left on the right or east side of the street on which such traffic would normally move. After plaintiff's second observation to the left, with no traffic approaching from that direction within the distance stated, and with his car then about to enter on the macadam surface of the through street, he looked to his right for possibly approaching traffic on the right or west side of the through street; this observation was necessary because he was about to cross the path on which southbound traffic from plaintiff's right would move. Having looked to the right, he then looked ahead, and followed that with a look to the left at a time when he had already reached a point in crossing the through street where, as he testified, the white center line was behind him; that is, a large part of his car was in the path of southbound travel; he then saw at "about fifteen yards" away the lights of defendant's truck coming from his left. The collision followed. The jury was justified in finding that the defendant was occupying part at least of the half of the street on which southbound travel should move.

Two witnesses who saw the truck a few moments before testified that it was traveling at the rate of fifty miles an hour. The truck driver said he was going twenty-five miles an hour.

It is difficult to see what plaintiff could have done that he omitted to do. He stopped at the appointed

place and, finding his view limited, drifted forward to the through street, making his second observation where his view was enlarged to the point where the curve might, on that night, have obscured approaching traffic. He was traveling in low gear. He was not required to anticipate that defendant would come through the built-up part of the borough at the high rate of speed stated by the two witnesses or at any other unreasonable rate; he could assume that such traffic would approach with due regard to the circumstances. He would not have done his duty if he had looked only to the left; as he was about to enter the path of possible traffic from his right, he was bound to look in that direction. He was also required to see ahead. After making those observations, which would easily occupy the short time he was in the intersection, he again looked to the left, although he had almost completed his crossing over the path of northbound travel on the through street. It required but few seconds to enable him to reach the point where he was struck, and as he could not look carefully in more than one direction at a time, we are not prepared to say that he failed in observing the standard of care applicable. It is a matter of simple mathematics to show that if the truck had approached from the curve referred to, at any rate of speed not exceeding the maximum allowed, the time occupied would have permitted the plaintiff to cross in safety.

The record does not call for extensive discussion of decided cases. The evidence supports a finding that the plaintiff was vigilant in observation from the moment he approached the intersection as defined by the statute; this at once distinguishes the cases in which a plaintiff looked where his view was obstructed without looking as his view was enlarged *(Riley v. McNaugher,* 318 Pa. 217, 178 A. 6) or where a plaintiff said he "looked in a more or less general way to both sides" *(Stevens v. Allcutt,* 320 Pa. 585, 184 A. 85.

The judgment is reversed and the record is remitted with instructions to enter judgment on the verdict for plaintiff.