Goddard *v.* Armour and Company, Appellant.

Argued March 14, 1939.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John L. Pipa, Jr.,* for appellant.

*Richard Henry Klein,* for appellee.

OPINION BY CUNNINGHAM, J., June 27, 1939:

Plaintiff has a verdict for $642, with judgment thereon, for damages to his Packard coupe, resulting from a collision at a street intersection between his automobile and a Dodge truck owned by defendant and operated by its servant upon its business. The accident occurred about ten o'clock in the forenoon of August 4, 1937; the day was clear and the streets dry.

In this appeal by the defendant the assignments covered by its statement of questions involved are those based upon the trial judge's refusal of its point for binding instructions and the subsequent denial by the court below of its motion for judgment in its favor notwithstanding the verdict.

Appellant's main contention is that plaintiff's own testimony convicts him of contributory negligence as a matter of law. Read in the light most favorable to plaintiff, and giving him the benefit of all reasonable inferences therefrom, the record shows the accident happened under these circumstances:

Front Street, a "through highway" in the city of Sunbury, Pennsylvania, runs north and south. Market Street runs east and west and intersects Front Street on the easterly side thereof, entering but not crossing

it and forming a "T" intersection with Front Street; each street is approximately 40 feet in width between curbs and paved. Although Market does not cross Front Street, the place of the accident was an "intersection" within the definition contained in Section 102 of the Vehicle Code of May 1, 1929, P. L. 905, and its amendments, 75 PS §2. The intersection was designated as a stop intersection by the erection at the entrance thereto of Market Street of a "stop" sign. See Section 1112 of the Code, as amended by the Act of June 22, 1931, P. L. 751, 75 PS §712.

Plaintiff was driving west on Market Street toward the Susquehanna River. Preparatory to making a left turn into Front Street, he came to a full stop at the "stop" sign, located some ten or twelve feet east of the east curb of Front Street. At this point he could not get a clear view to his left (i. e. south) on Front Street due to foliage and trees in a yard on the corner. With his car in low gear, plaintiff then drove slowly toward Front Street, saw nothing approaching from the north, but, as stated in his direct examination, did see appellant's truck approaching on his left "about a block away." His testimony under cross-examination relative to the distance at which he first saw the truck and the manner in which it was approaching reads: "Q. In feet, how many feet would you say the truck was away from you when you first observed it? A. I would say one hundred and fifty to two hundred feet. Q. How fast would you say it was approaching you? A. I don't know, sir." Continuing on into the intersection, plaintiff's car was struck on its left front side when he had almost cleared the center line of Front Street and was from twelve to fifteen feet south of the extended south curb line of Market Street.

Plaintiff's witness, Hogan, a bystander who had an unobstructed view of the collision, testified in direct examination: "I watched the Packard and he drove out slowly and he made the turn and was going around and

I was watching it and by that time I seen this truck coming and I saw the crash. I judge the front part was over the center line of Front Street; he didn't quite make the turn yet."

An excerpt from his cross-examination reads: "Q. You say the Packard didn't quite make the turn when it was struck? A. I mean it was not entirely on the right side of the road. Q. A part of the Packard was still on the east side of Front Street? A. The rear part might have been this way a piece (indicating), yes, sir. Q. So when the Packard was struck it was diagonally across Front Street? A. Pretty near made the turn. Q. It was in a diagonal position when it was struck? A. He was not straight. Q. He must have been at some angle? A. He was at a little angle, yes, sir."

An examination of the testimony for the appellant discloses nothing which in any way strengthens plaintiff's case, except the admission of the driver of the truck that he was approaching the intersection of Market with Front Street at a speed of from "twenty to twenty-five miles an hour." When asked whether he had reduced this speed because he was approaching that intersection, his reply was: "I don't think you are supposed to when you are on the main highway." The substance of his testimony was that he made no effort to check his speed until, as he asserted, plaintiff "pulled out in front of [him]." His version of the accident was that as plaintiff came out of Market Street "he (plaintiff) made one short left-handed turn and when he seen he could not make it he turned short to the right and I caught him." He stated further that in an effort to avoid a head-on collision he turned his truck to the left.

As we are assuming, for present purposes, that appellant's driver was negligent, we disregard his statements about the sudden turns and accept plaintiff's testimony that he "made an arc cut, swung around in an arc,"

having kept his car in low gear from the time he "left the stop sign."

Realizing at the oral argument that plaintiff's state-ment, on his direct-examination, that when he first saw appellant's truck coming from the south it "appeared to be about a block away," was too indefinite to be of any value, counsel for the parties subsequently filed in this court a stipulation that the "block" referred to is the block on Front Street between Chestnut and Market Streets, 480 feet in length, and that halfway between these streets there is a "twenty foot wide alley which enters Front Street from the east but does not cross the same." It was further stipulated that these facts should "be considered on appeal the same as though set out in the testimony in the trial of the case in the court below." For reasons hereinafter stated, we cannot treat this stipulation as bringing these facts upon the record.

Giving the plaintiff the benefit of every inference from the testimony, the most that can be said upon this phase of the case is that as he approached the intersection with his car under full control he saw appellant's truck at a distance of from "150 to 200 feet" south of the intersection and approaching at a rate of speed of from "twenty to twenty-five miles an hour."

We have reached the conclusion that when the evi-dence closed appellant was entitled to have its point for binding instructions affirmed, because plaintiff's testi-mony showed he had been guilty of contributory negli-gence as a matter of law.

Section 1014 (c) of the Code, supra, as amended by the Act of June 22, 1931, P. L. 751, Sec. 2, 75 PS §573, provides: "The driver of a vehicle entering a through highway or stop intersection, which has been established as such under the provisions of this act, shall yield the right of way to all vehicles approaching in either direction on such through highway." Section 1016

(75 PS §591) of the same act required plaintiff to come to a full stop before entering Front Street.

The extent of the statutory duty imposed upon plaintiff under Section 1014(c), supra, was thus stated by Mr. Justice DREW, speaking for our Supreme Court in *Dougherty v. Merchants Baking Company*, 313 Pa. 557, 169 A. 753, at page 560: "Defendant's truck had the right of way, and [plaintiff] was bound to permit it to pass, unless, as we have so often said, he was so far in advance that, in the exercise of reasonable care and prudence, he was justified in believing that he could cross the intersection ahead of the approaching vehicle without danger of a collision: *Weber v. Greenebaum*, 270 Pa. 382; *Alperdt v. Paige*, 292 Pa. 1; *Weinberg v. Pavitt*, 304 Pa. 312." See also *Riley v. McNaugher*, 318 Pa. 217, 178 A. 6.

In considering whether plaintiff arrived at the intersection so far in advance of the truck that a reasonably careful and prudent person would be justified in believing he could enter the intersection and make a left turn on Front Street without danger of a collision, all the factors, including the distance intervening, the apparent speed of the approaching vehicle, the presence or absence of other vehicles on the through highway, etc., must be taken into consideration. See *Steckler v. Luty et al.*, 316 Pa. 440, 175 A. 481, where there was evidence that the car approaching on the through highway was from five to six hundred feet away.

Upon the factor of distance, reference may be made to *McAmbley v. Martin*, 100 Pa. Superior Ct. 593, where a plaintiff, seventy-five feet from an ordinary right angle intersection and traveling twenty-five miles per hour, saw the defendant approaching from his right two hundred feet away but nevertheless entered the intersection; he was held guilty of contributory negligence as a matter of law. See also *Fraser v. Voight*, 100 Pa. Superior Ct. 248.

Granting that there may be cases, such as *Steckler v.*

*Luty et al.,* supra, in which the question, whether a driver entering upon a through highway was justified in believing he could pass in front of an approaching vehicle without danger of a collision, should be submitted to a jury under proper instructions, it is equally clear there is a dividing line beyond which it is the duty of a trial judge to say as a matter of law that a driver in so doing was, under the circumstances of the case in hand, obviously testing a manifest danger and therefore guilty of contributory negligence. We are convinced this is such a case.

There were no other vehicles in or near the intersection. As plaintiff reached the north bound lane of travel on the through highway, with his car in low gear, he had a clear view of the approaching truck then, in his own language, only from one hundred and fifty to two hundred feet away, with its driver giving no indication of slowing down for the intersection. It is true plaintiff declined to estimate the speed of the truck, but if he looked with any degree of attention he must have seen it was traveling much faster than the slow rate at which he says he was proceeding and should have realized from what he saw, if he looked, that it would be only a matter of seconds until the truck would be in the intersection—and if the only evidence on the subject, that of the truck driver, be accepted, not more than seven.

No jury could properly be permitted to say that a driver intending to make a left turn into a through highway was exercising reasonable care and prudence in driving in front of that truck.

As respects the stipulation to which we referred, we desire to point out that stipulations by counsel of facts not appearing from the record of the case, as tried in the court below and certified to an appellate court, are manifestly unfair to the trial court and contrary to the principles of sound appellate practice; we therefore must decline to consider the one filed in this appeal.

See 4 Corpus Juris, page 119, Section 1728. In *Stelk v. McNulta,* 99 Fed. 138, (1900, C. C. A., 7th), a case involving the alleged negligence of the motorman of a street railway in failing to observe an object on the track, the Circuit Court of Appeals stated (page 141): "We might properly disregard the stipulations of the parties with respect to facts not found by the master or the court below, and made subsequent to the decree. We sit here to review the rulings of the court below, not to pass judgment upon stipulations of parties made subsequent to such rulings, and not properly preserved in a bill of exceptions or verified as part of the record by the certificate of the judge." Appellate courts cannot consider anything which is not a part of the record of a case: *Heller v. Capital Bank & Trust Co., Trustee et al.,* 330 Pa. 174, 180, 198 A. 298.

Cases cited and relied upon by the court below in refusing appellants' motion for judgment n. o. v. are distinguishable. In *Federman et ux. v. O'Connor,* 117 Pa. Superior Ct. 295, 178 A. 155, plaintiff, going west on Lancaster Avenue, was about to make a left turn into 59th Street. He arrived at the intersection first and saw defendant, coming east on Lancaster Avenue, approaching from 150 to 200 feet away at fifty to fifty-five miles per hour. Plaintiff drove a few feet to his left over the center line of Lancaster Avenue and stopped to permit defendant, who had a clearance of thirty feet in his lane of travel, to pass; instead defendant drove into plaintiff. We held plaintiff was not contributorily negligent as a matter of law. That case is distinguishable from the present as there plaintiff had the right of way, by reason of being so far in advance of defendant, and was under no statutory duty to stop. Furthermore, that plaintiff did not pull out in front of the defendant and block his path; he remained stationary and afforded ample room for defendant to pass. In *Brungo v. Pittsburgh Railways Co.,* 132 Pa. Superior Ct. 414, 200 A. 893, plaintiff also had the right of way

and a green light in his favor and was justified in assuming the street car which struck him would obey the red light against it.

Counsel for plaintiff argues, in his supplemental brief, that the case of *Bowers v. Gaglione*, 322 Pa. 329, 185 A. 315, rules the present case in his favor. There, as here, plaintiff came west on a side street to a through street running north and south. There, however, the street plaintiff was on cut completely across the through street at right angles, and his intention was to cross the main highway. A distinguishing and significant difference in the facts is that in the Bowers case the plaintiff, when he reached a point where he could see 250 feet to his left, the direction from which defendant's truck later suddenly appeared, looked to his left and saw no traffic approaching from that direction. He was struck, after reaching the far half of the through highway, by defendant's truck which came down the middle of the through street and from around a bend at fifty miles per hour. The conduct of one who, when entering a through highway, drives directly into the path of an approaching vehicle which he admits he saw cannot be compared with that of one who enters a similar intersection with nothing in view for a distance of 250 feet. The first assignment of error and that portion of the second which relates to the denial of appellant's motion for judgment n. o. v. are sustained.

Judgment reversed and here entered for appellant.