## National Chair Company, Inc., Appellant, v. Barrall.

Argued May 12, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John L. Pipa, Jr.,* for appellant.

*Richard Henry Klein,* with him *J. Mettler Pensyl,* for appellee.

OPINION BY MR. JUSTICE PARKER, June 30, 1941:

The plaintiff in this action of trespass growing out of a collision between two trucks secured a verdict of a jury but the court below entered judgment n. o. v. for defendant on the ground that the negligence of plaintiff's driver, its employee, contributed to the accident. Plaintiff has appealed. We are agreed that the contributory negligence was so clear that the court was required to enter the judgment it did.

The collision occurred in the town of Elysburg at a right angled intersection of Routes No. 54 and No. 242, the latter a through highway. Each street was paved in the center to a width of sixteen feet and on Route 242 there were berms seven feet in width. On the afternoon of a clear and dry day plaintiff's servant was driving its tractor truck with trailer attached south-

ward on Route No. 54. The combined length of tractor and trailer was thirty-three feet. Near the center of the intersection a truck driven by defendant's employee east on through highway No. 242 collided with plaintiff's truck and trailer, striking it at the front right wheel. At the time of the collision plaintiff's truck had reached a point two feet beyond the center line of Route No. 242, while defendant's truck was being driven in the center of the road.

We will assume that defendant's driver was negligent in approaching the intersection and confine our attention to the alleged contributory negligence of the plaintiff, the sole question raised by the arguments of the parties.

The evidence will be considered in a light most favorable to plaintiff. Plaintiff's driver who was familiar with the crossing, having passed it many times, stopped the truck and trailer at a stop sign at the northwest corner of the intersection and as his view was obstructed by a building he moved forward a foot where he had an unobstructed view for three hundred feet to the right. He testified that he also looked to the left and that there was not a car then coming in either direction. From that point we quote from his testimony: "I looked to my right again about three hundred feet away, and I figured he would go slow and I turned my head again to look and there was a flash. Q. What gear were you in? A. Low gear. Q. How fast were you proceeding? A. Just moving; about a mile an hour, two miles an hour; I was just moving; I was just starting off. Q. When you looked to the right the second time you say this truck was right on you then? A. Yes sir. Q. What portion of the highway was he occupying? A. The center of the highway. . . . Q. Now, just where were you when you saw Mr. Hamdan coming? A. Right at the stop sign; I looked and I seen him about three hundred feet. I looked to the right and the second time I seen him coming when I looked. Q. The second time you saw him coming? A. Yes sir.

Q. How far away did you say he was? A. About three hundred feet. Q. Now, just where were you? A. Where the walk crossed, my front wheel would be off the curb, just south of the curb. . . . Q. When did you look, from the time you left the curb line, until you got to the point of impact? A. My front end would be about a quarter way of the center and I turned my head and I saw a big flash. . . . Q. The first time you saw him? A. I saw him at three hundred feet. Q. Did you observe his speed there? A. No sir, I didn't . . .. Q. Did you observe Mr. Hamdan's speed at three hundred feet? A. I didn't observe it until he came on top of me. . . . A. I figured if there was a sign to slow down he should slow down to fifteen miles an hour. Q. You were relying on that? A. Yes sir. Q. Now where was he when you based his speed at fifty miles per hour; how far to your right? A. Around fifteen feet, or maybe less than that. . . . Q. When you saw this truck why did you keep on going south? A. I thought he was going at a rate of speed that he could stop. Q. Didn't you look at him any more? A. No sir; just glanced and there was a flash in front of my face." There was the evidence of one other witness that defendant's truck was moving at the rate of forty-five miles per hour.

Plaintiff's driver was bound to exercise reasonable caution to avoid an accident even though defendant's driver was negligent: *Lehner v. Schellhase*, 341 Pa. 260, 19 A. 2d 91. Plaintiff's own evidence clearly showed that its driver did not exercise ordinary care and prudence in attempting to cross the through highway ahead of an oncoming car. The driver was operating a slow moving, cumbersome and heavy laden tractor and trailer and while yet in a place of safety saw the other truck on a through highway approaching the intersection. Instead of giving some heed to the speed of the other truck he assumed, as he testified, that it would be slowed up sufficiently for him to pass ahead of it with his long conveyance. He stated that

the other truck when within fifteen feet of the intersection was travelling at the rate of forty-five or fifty miles per hour, which was more than twenty times the rate of speed at which plaintiff's truck was moving. From the curb to the far side of the paved highway was a distance of at least twenty-three feet and his conveyance was thirty-three feet in length. This meant that the plaintiff's driver had to travel fifty-six feet before his trailer was clear of the paved portion of Route 242. Even if we assume that the defendant's truck was only going at ten times the rate of speed of plaintiff's truck, the machines were bound to meet. Cf. *Woerner v. Heim*, 124 Pa. Superior Ct. 246, 188 A. 391.

It is obvious that plaintiff's driver instead of exercising ordinary care and prudence to ascertain whether he was justified in attempting to cross the intersection tested a known danger relying on defendant's driver to yield the right of way to him on a through highway: *Dougherty v. Merchants Baking Co.*, 313 Pa. 557, 560, 169 A. 753. If he had not driven blindly he would have seen defendant's truck coming at such a speed compared to his own that the exercise of reasonable prudence would have required him to wait for the coal truck to pass: *Clee v. Brinks, Inc.*, 135 Pa. Superior Ct. 345, 355, 5 A. 2d 387. One approaching a through highway and intending to enter it must do more before crossing than take a cursory glance at the road. He must be careful and attentive to see the traffic conditions. The sort of looking that was done by the driver of plaintiff's truck does not fulfill the requirements of the law: *Stevens v. Allcutt*, 320 Pa. 585, 587, 184 A. 85. Not only did he fail to make a sufficient observation before moving into the intersection, but he should have continued to look after he left the curb and before he reached a point where a collision could not be averted. He stated that he could have stopped his car in three feet.

Appellant at the oral argument and in its brief contended that defendant's driver accelerated his speed as

he approached the intersection and that the principles stated in *Michener v. Lewis,* 314 Pa. 156, 170 A. 272, and *Korenkiewicz v. York Motor Express Co.,* 138 Pa. Superior Ct. 210, 10 A. 2d 864, are applicable. We have searched the record in vain for any evidence showing acceleration in the speed of defendant's car. The cases are therefore not in point.

*Maio, Exrx., v. Fahs,* 339 Pa. 180, 14 A. 2d 105, also relied upon by the appellant is distinguishable on its facts from the present case. There we held that the drivers of both cars were negligent but allowed plaintiff to recover because the negligence of the driver could not be imputed to plaintiff's decedent who had no part in the operation of the car.

*Bowers v. Gaglione,* 322 Pa. 329, 185 A. 315, is not in point for there plaintiff could see no traffic approaching for two hundred fifty feet, the extent of his view. The distinction is well expressed in *Goddard v. Armour & Co.,* 136 Pa. Superior Ct. 158, 167, 7 A. 2d 79, where Judge CUNNINGHAM, speaking for the Superior Court, said: "The conduct of one who, when entering a through highway, drives directly into the path of an approaching vehicle which he admits he saw cannot be compared with that of one who enters a similar intersection with nothing in view for a distance of 250 feet." The facts and principles involved in the Goddard case closely resemble those found here.

Judgment affirmed.