## LYNCH v. SCALIA.

### No. 1562.

District Court, E. D. Pennsylvania.
April 30, 1942.

William Charles Brown and Harry R. Kozart, both of Philadelphia, Pa., for plaintiff.

Philip Sterling and Elias Magil, both of Philadelphia, Pa., for defendant.

BARD, District Judge.

Plaintiff filed a motion for a new trial because of inadequacy of the verdict. Defendant filed a motion to set aside the verdict in favor of the plaintiff and to have judgment entered in accordance with his motion for a directed verdict as provided by Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ The administratrix of Frederick A. Lynch instituted an action to recover damages as a result of his death when struck by a truck owned by defendant. The case was tried before a jury and resulted in a verdict for the plaintiff. Defendant made a motion for a directed verdict, which was denied. Within ten days after the verdict, he moved to have judgment entered in accordance with his motion for a directed verdict. The testimony, considered in the light most favorable to the plaintiff, as is of course necessary when passing upon defendant's motion for a directed verdict, revealed the following facts:

On February 28, 1941, Albert Caudo, an employee of defendant, was driving defendant's one and a half ton Chevrolet truck, loaded with about two tons of produce, on the business of the defendant. The truck had a twelve-foot-wide body. It was proceeding northward on Fifth Street, in the City of Philadelphia, and at about 11 A.M. entered an underpass of that street below the Delaware River Bridge. It was snowing that day, the streets were wet and slippery and traffic had caused the roadway in the underpass to become wet. The entrance to this underpass is not on direct line with the main course of Fifth Street and it is necessary to curve to the right for a short distance before entering. In the underpass looking north Fifth Street slopes downward for about 400 feet, levels off for about 85 feet, and then slopes upward for about 400 additional feet. The tunnel portion is 22 feet wide with a one foot curb on each side, leaving a roadway for vehicular traffic of 20 feet. A set of trolley tracks runs the length of the underpass, the east rail of which is 2 feet 5 inches from the east curb, and the width of the rails is 5 feet 2 inches. The tunnel portion is well lighted, although plaintiff produced other testimony to contradict this.

Caudo, called by the plaintiff as her sole witness to the accident, testified that he entered the underpass in second gear and started down the hill, going twenty to twenty-five miles an hour and driving in the car tracks. After entering the underpass, he saw a truck 50 to 100 feet ahead standing still on the left side of the roadway facing northward, Fifth Street being a one-way street at this point. When he got real close he saw the decedent who was standing at the right rear wheel of this truck. Caudo continued on until he was 25 to 30 feet from the decedent, when he attempted to swing his truck to the right. In so doing he struck the east side of the tunnel, his left front wheel "locked", and his truck swung in the opposite direction, striking and pinning decedent against the parked truck and killing him. The truck was parked at a distance from the left or west curb wide enough for a motorcycle to pass on its left, but not wide enough for an automobile to do so. The decedent, who had been standing erect facing north with his back to traffic, did not change his position until the accident, although Caudo testified that he blew his horn. The following question and answer were given by Caudo on cross-examination:

"Q. Mr. Caudo, you have described the position somewhat of Mr. Lynch's truck when it was stopped or parked with Mr. Lynch alongside of it. Was there room between Mr. Lynch's truck and Mr. Lynch alongside, and the right wall of the tunnel, for your truck to go through? A. No, there was no room. I couldn't make it."

■■ The principal ground for the defendant's motion is that the decedent was guilty of contributory negligence in standing with his back to traffic in the narrow space between his parked truck and the east side of the underpass. Regardless whether there was enough space between the point where the decedent was standing and the east curb for Caudo to have driven his truck through without striking the decedent (and the testimony indicated that there was not), it is clear that the decedent had placed himself in an obviously dangerous situation by standing to the right of his parked truck with his back to

traffic. Under Pennsylvania law, by which this case is ruled, there is a long line of cases, of which Sipko v. Pennsylvania Railroad Co., 332 Pa. 106, 2 A.2d 717, is typical, holding that a person who voluntarily assumes a hazard, as where he stands or walks in a railroad or trolley track and is injured as a result thereof, is guilty of contributory negligence as a matter of law. It is likewise held that inattention in an obviously hazardous situation constituted contributory negligence. Clark v. Pittsburgh Railways Co., 314 Pa. 404, 171 A. 886.

Plaintiff, however, relies upon Roberts v. Freihofer Baking Co., 283 Pa. 573, 129 A. 574, and similar cases in which it is held that a person who is doing some temporary work which requires him to be on the outside of his automobile is not guilty of contributory negligence in failing to anticipate that an automobile would graze or strike him. In all of these cases, however, there was ample room for the defendant's automobile to pass the person standing on the outside of the parked car without striking him.

In the case at bar the portion of the highway open to passage by the defendant's truck to the right of the parked truck was at the very best so narrow that anyone standing thereon was in obvious and imminent danger of being struck by the traffic thereon. Where the lane of traffic open is so narrow that vehicles have no room to turn out, the situation is much more closely analogous to the railroad case, and trolley cases, in which the defendant's vehicle is confined to the tracks on or near which the injured person was standing or walking, than to the automobile cases relied upon by the plaintiff, in which the defendant's vehicle had room to turn and avoid striking or endangering the injured person.

In Rothweiler v. Philadelphia Rapid Transit Co., 93 Pa.Super. 369, a seven-foot truck was parked on the right side of a street containing trolley tracks. The total space between the curb and the tracks was 8 feet 10 inches. Plaintiff was squatting to the left of the rear wheel at a point where, according to his testimony, he was sure he was clear of the overhang of the trolley. In denying recovery to the plaintiff for the injuries he sustained when struck by a trolley, the court held that he was guilty of contributory negligence in voluntarily placing himself in a position of danger. In its opinion, the Superior Court pointed out that the plaintiff knew of the narrowness of the space between the parked truck and the trolley track and hence it was immaterial whether he miscalculated or crouched lower and further than he had intended. This case is highly analogous to, if not controlling of, the case at bar. Although the decedent in the case at bar was struck by a truck rather than a trolley as in the Rothweiler case, the narrowness of that portion of the highway in which decedent was standing to the right of his truck precluded the defendant's vehicle from turning out to avoid striking the decedent.

Moreover, there is no evidence whatsoever in the case at bar of any reason why the decedent was standing where he was. In the cases relied upon by the plaintiff, the injured party was shown to have been engaged in making repairs to the parked car or some similar justification was offered for his exposing himself to a position of obvious danger. Where no such cause is shown, the injured person is guilty of contributory negligence in voluntarily placing himself in a position of peril. See Bardis v. Philadelphia & Reading Ry., 267 Pa. 352, 109 A. 621; compare also United States v. Philadelphia Transp. Co., D.C., 38 F.Supp. 246.

Plaintiff relies further on the presumption that a person killed in an accident was exercising due care at the time thereof. Michener v. Lewis, 314 Pa. 156, 170 A. 272. There is, however, no room for the application of that presumption where the evidence shows affirmatively physical conditions and all other circumstances of the accident to the contrary. Bernstein v. Pennsylvania Railroad Co., 252 Pa. 581, 97 A. 933; Zotter v. Lehigh Valley R. Co., 280 Pa. 14, 124 A. 284; Neal v. Buffalo, Rochester & Pittsburgh Ry. Co., 289 Pa. 313, 137 A. 453.

Under the Pennsylvania authorities, therefore, the decedent was guilty of contributory negligence as a matter of law and this question should not have been submitted to the jury. In view of this conclusion, it is unnecessary to pass upon the defendant's further contentions that no negligence on his part was shown, and that the plaintiff did not prove herself to be the lawful wife of the decedent, or upon plaintiff's motion for a new trial because of inadequacy of the verdict.

Plaintiff's motion for a new trial is denied. Defendant's motion to set aside the verdict and to enter judgment in his favor is granted.