## Freedman, Appellant, *v.* Ziccardi.

Argued November 10, 1942.

Before KELLER, P. J., CUNNING-

HAM, BALDRIGE, STADTFELD, RHODES, HIRT and KEN-
WORTHEY, JJ.

*William F. Quinlan,* for appellant.

*John J. McDevitt, 3d,* with him *John J. McDevitt, Jr.,*
for appellee.

OPINION BY KELLER, P. J., January 28, 1943:

This is a trespass case, heard, as respects the plaintiff
appellant, *in forma pauperis.* Accordingly we have
used the original notes of testimony filed as part of the
record.

The case involved a right-angle collision, in which
the defendant's truck traveling east, on the *wrong*
(north) side of a two-way street, fifty feet wide, ran
into the left front side of plaintiff's car, traveling north
on a one-way street, when the plaintiff had cleared
three-fourths of the intersection.

The jury returned a verdict for the plaintiff, which
the court in banc set aside on the ground of his con-
tributory negligence, and entered judgment for the de-
fendant *non obstante veredicto.* The court, at the same
time, refused the defendant's motion for a new trial.

We are of opinion that the contributory negligence
of the plaintiff was not so clearly established as matter
of law as to justify the court in setting aside the ver-
dict; that it was a question of fact for the jury and
their finding upon it should not have been disturbed.

Third Street in the City of Philadelphia is a one-way
street for north-bound traffic, with a roadway twenty-
six feet wide and a sidewalk twelve feet wide on each

side. It passes under the Delaware River Bridge, under which there is a fifty-foot wide two-way street or roadway, without sidewalks, running east and west, and flanked on both sides by columns or pillars supporting the bridge approach. The witnesses do not agree as to the name. of this road or street. One called it Flora Street, or Florist Street; while another applied that name to a small twenty-foot wide street south of the bridge and south of a space twenty-five feet wide immediately next to it, used as an 'island' to protect the bridge columns or pillars supporting the bridge approach. The collision took place at the intersection of Third Street with the fifty-foot wide street directly under the bridge, and not at the small twenty-foot wide street, twenty-five feet south of it. Just for convenience we shall call the road or street under the bridge 'Flora' Street.

The evidence—considering it in the light most favorable to the plaintiff, as we are required to do—warranted a finding that he was traveling north on Third Street at a speed of fifteen to twenty miles an hour, as he testified, or ten to twelve miles, as testified to by his witness, Dektor, who was standing in front of his place of business, 211 North Third Street, about forty feet south of the small twenty-foot street. Plaintiff was slowing down as he approached the intersection, which may have accounted for the difference of opinion as to his speed. As he approached 'Flora' Street, he slowed down, or stopped, at the corner and looked both ways, that is, first to his left and then to his right. He had a clear view to his left for only one hundred to one hundred and fifty feet. While he did not specifically say so, it was inferable from the evidence that his vision was obstructed to some extent by the columns or pillars or abutments used as bridge supports. He saw no one coming and proceeded slowly to cross 'Flora' Street, and was three-quarters way across the street under-

neath the bridge and close to the northern curb or line when he was run into by the defendant's truck coming very fast from his left—that is from the west—on the wrong side of the street, on that portion devoted to traffic going from east to west. Plaintiff did not observe defendant until the latter was forty or fifty feet away and was hit almost immediately thereafter.

The lower court could not understand why plaintiff's view when he started to cross 'Flora' Street was only one hundred to one hundred and fifty feet to the left, overlooking, apparently, the testimony of the city employee in the Bureau of Engineering as to the pillars, columns or abutments located in the 'island' space, and used to support the bridge structure. The court also thought that plaintiff was guilty of contributory negligence because he did not keep looking to his left and consequently did not see defendant's truck coming from that direction—that is, *from* the west—until it was only forty or fifty feet away and too late to avoid a collision.

We have pointed out a number of times that it is the duty of the driver of a vehicle approaching a two-way street to look *first* to his *left* and then to his *right*. That is because he first enters the lane in which traffic coming from his *left* is traveling. If he sees nothing approaching that would be likely to prove a source of danger to him, he may proceed, but as he *nears the middle of the street,* it is his duty to look to his *right* again before entering into the traffic lane coming from that direction: *Lewis v. Hermann,* 112 Pa. Superior Ct. 338, 341, 342, 171 A. 109; *Kaiser Co. v. American Ind. Laundry Co.,* 138 Pa. Superior Ct. 124, 127, 10 A. 2d 64; *Lochhead v. Nierenberg,* 143 Pa. Superior Ct. 507, 511, 18 A. 2d 472. He has a right to expect that persons using the street will use the traffic lane or lanes proper for their direction of travel. He is not obliged to *expect* negligence on the part of the travelers on the

street: *Bowers v. Gaglione,* 322 Pa. 329, 332, 185 A. 315; *Hurd v. Dietz,* 317 Pa. 525, 527, 177 A. 23; *Cunningham v. Spangler,* 123 Pa. Superior Ct. 151, 156-158, 186 A. 173; *Probka v. Polis,* 124 Pa. Superior Ct. 129, 131, 188 A. 393. After he has *entered* the west-bound traffic lane or lanes, he is under no compelling duty to look for east-bound vehicles coming *from his left* and traveling on the wrong side of the street. A vehicle traveling ten miles an hour goes fifteen feet a second, and one going fifteen miles an hour, twenty-two feet a second. The glance or look must necessarily be cursory and he should not be expected to look out for, or be on his guard against, one violating the law by *coming from* a direction intended only for those *going toward* that direction.

All the cases cited and relied on by the court below related to accidents happening when the defendants were traveling in their proper lanes of traffic and were not going against or 'bucking' traffic. They are not applicable here.

We pay no attention to the *guess* of the plaintiff that he could have stopped his car in *two* feet. His testimony was that he was traveling at the time at the rate of fifteen to twenty miles an hour. Dektor said ten or twelve miles an hour. Most drivers have little or no knowledge as to the minimum distance an automobile will travel before it can be stopped. It has been accurately determined that a car with two wheel brakes traveling ten miles an hour will go a minimum distance of 12.5 feet on an extra smooth road, 9.2 feet on an average road and 6.9 feet on an extra rough road, before it can be stopped; and that with four wheel brakes, the minimum stopping distances are respectively 5.8 feet, 4.3 feet and 3.2 feet; while for a car with two wheel brakes going fifteen miles an hour the several minimum stopping distances are 28.1 feet, 20.8 feet and 15.7 feet; and with four wheel brakes 13.2 feet, 9.7 feet

and 7.3 feet. At twenty miles an hour, the minimum stopping distances for a two wheel brake car are: 50 feet, 37 feet and 27.9 feet, respectively; and for a four wheel brake car, 23.5 feet, 17.3 feet and 13.1 feet.

The *guesses* of uninformed drivers as to the distance within which they can stop a car are of no value whatever.

The judgment is reversed and it is directed that judgment be entered for the plaintiff and against the defendant in accordance with the verdict.