## Wickline *v.* Pennsylvania Railroad Company, Appellant.

Argued March 22, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused May 10, 1943.

*Harry C. Golden,* for appellant.

*Charles E. Harrington* and *Robert E. Ashe,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 22, 1943:

Market Street, the principal business street in the Borough of Kittanning, extends in an easterly and westerly direction and is 55 feet wide from curb to curb. It is intersected by Grant Avenue, which runs in a northerly and southerly direction and is also approximately 55 feet from curb to curb, but the easterly half of it is occupied by two tracks of the Pennsylvania Railroad Company and is not available for vehicular traffic, so that the traversable part, the westerly half, is about 27 feet in width. The railroad crossing at the intersection of Grant Avenue and Market Street is paved between and on either side of the rails, the tops of which are level with the surface of the street; to the north and south of Market Street, however, the space between the rails and for about two feet outside of them is not paved, the ties and ballast are exposed and depressed slightly below the level of the street, and the rails rise seven inches above the ties. From the measurements stated it will be observed that a vehicle travelling north on Grant Avenue, keeping to the easterly half of the traversable highway

but off the unpaved portion outside the rails, would have a passageway or clearance, in its lane of travel, of about twelve feet in width, or only nine feet if allowance be made for the presence of parked cars for which spaces are marked off along the westerly curb line of Grant Avenue beginning some sixty feet north of Market Street.

On the night of March 7, 1940, Sherman Wickline was driving an automobile at a moderate rate of speed east on Market Street, and at Grant Avenue made a left turn to go north. In making this turn the right wheels of his car went inside the westernmost rail just as a freight train, made up of 114 empty cars and travelling at the rate of 40 to 45 miles an hour, was coming south on the westerly track and only 225 feet away. He tried to extricate his car but the time was not sufficient in which to escape. The train struck the automobile at a point on Grant Avenue not clearly indicated in the testimony but presumably a very short distance north of the Market Street intersection. Wickline was killed. His wife brought suit for damages against the railroad company on her own behalf and as trustee ad litem on behalf of all persons entitled to share in the damages. The jury rendered a verdict for plaintiff and the court overruled defendant's motion for judgment n. o. v.

The story of the accident was narrated by two witnesses called by plaintiff. One, the engineer of the train, testified that Wickline "made a left turn and in doing so he straddled the rail. His right wheels were in between the rails that the train was operating on, and he came on towards me. I judge he was in the neighborhood of 225 feet away when I saw the automobile make a left turn." The other witness was driving a car east on Market Street in back of Wickline's automobile; he testified: "I saw the lights [of Wickline's automobile] turn to the left, around quite a wide circle . . . and then there was a crash, just in a moment." This is substantially all the evidence that was presented in regard to the way in which the accident happened.

Two charges of negligence are made against defendant, one, that the train was being operated at an excessive rate of speed through the borough, and the other, that some years previously defendant had chopped off part of a concrete curb five or six inches in height that had been erected by the borough authorities all along Grant Avenue parallel to and west of the westernmost rail of the tracks on the line between the paved and unpaved portion of the highway. The railroad company, apparently finding that this curb interfered in places with the overhang of the trains, had leveled it off for a distance of about fifteen feet immediately north of the northerly line of the Market Street intersection. It was the theory of plaintiff that the curb had served as a marker, and also as a buffer, between the paved, safe portion of the highway and the portion occupied by defendant's roadbed, and that by reason of its partial removal the danger to vehicles travelling north on Grant Avenue, and especially to those turning into Grant Avenue from Market Street, that they might inadvertently go over the rail and into the southbound track, was greatly augmented.

We need not consider the questions thus raised because, even if we assume that at least in regard to the speed of the train defendant was negligent, we are of opinion that Wickline's contributory negligence is so clear that the judgment entered in the court below cannot be sustained.

The left turn from Market Street into Grant Avenue was obviously attended with some danger because of the fact that a too-wide swing, carelessly made, would carry the right wheels of the vehicle over the rail, and while this would not be serious if it occurred at the intersection of the two highways where the roadbed was paved, the situation would be different if it happened north of the intersection, because there the operator, in order to extricate his car, would be obliged either to force its wheels over the seven-inch rail or back the car to the

intersection so as to bring it again onto the level of the paved highways. This danger was known to Wickline, not only because he had lived in Kittanning for many years, but because his wife had told him "never to come up that way; it was too narrow."

Having in mind these conditions and the consequent need for extra caution, the contributory negligence of decedent is manifest when we consider what he, as one acquainted with the situation, *should* have done in making his turn into Grant Avenue and what he *did*. Coming east on Market Street and arriving at Grant Avenue with the intention to turn left up the latter street it was his duty to look north to see if a train was approaching. Whether or not he did this does not appear in the testimony; if he failed to look he was negligent, and if he did look he must have seen the headlight of the oncoming train which, as he turned, was only 225 feet away; moreover, the rumble of an engine with a train of over a hundred empty cars must of itself have announced its approach. To have made the turn in the face of a train so close and coming at the rate of 40 to 45 miles an hour, instead of waiting until it had passed, was grossly negligent; indeed, if he had been *crossing* the tracks in order to continue east on Market Street and had been struck by a train approaching at that distance and speed, he would certainly have been guilty of contributory negligence although the danger in crossing would not have been as great as in making the left turn with its attendant risk of getting caught in the rail. Furthermore, he was required, by section 1011 (b) of the Vehicle Code of May 1, 1929, P. L. 905, to pass to the left of the center of the intersection of the two highways, and then he should have hugged as closely as possible the middle line of the westerly half of Grant Avenue; if he had done so he would have had, at that point, a safe passageway of 12 feet in width. There is no evidence that there was any other traffic at the time proceeding south on Grant Avenue and there was no reason why he could not have kept sharply to his left and away from

the track. Instead of doing this he apparently made a wide turn, for the witness who was in the car in back of him stated that the lights of decedent's car went "around quite a wide circle," and, according to the locomotive engineer, he straddled the rail in the very act of turning. Nor is it clear how the absence of the fifteen feet of curb in any way excused the negligent operation of his car; if he could have seen the curb had it been there he could equally well have seen the railroad tracks and ties, and the headlights of his car as he proceeded to the north must have illuminated the road for a distance of much more than fifteen feet and revealed the curb which extended from there on to the north. Indeed it is highly improbable that he got inside the track while traversing the stretch of fifteen feet, because in that event his car would have had to rise diagonally over the seven-inch rail; it is far more likely that he drove upon the track on the paved intersection and then, straddling the rail, turned to the left and into the unpaved portion of defendant's roadbed, in which case the absence of the curb would have had no significance whatever in regard to the accident.

Summarized, the case comes down to this: Wickline not only turned into Grant Avenue at a time when a train was closely approaching, although the danger, of which he was well aware, could have been avoided if he had waited until the train had passed, but he also made a *wide* turn, swinging out over the rail instead of keeping to his left and along the center of the traversable portion of Grant Avenue, which nothing would have hindered him from doing. While there is a factual presumption, when a person is killed in an accident, that he was exercising due care (*Michener v. Lewis*, 314 Pa. 156, 170 A. 272), that presumption gives way if the facts established by plaintiff's own testimony show that the decedent was guilty of contributory negligence: *Tull v. Baltimore & Ohio R. R.*, 292 Pa. 458, 141 A. 263; *Ray v. Lehigh Valley R. R. Co.*, 321 Pa. 538, 184 A. 445.

Judgment reversed and here entered for defendant.