# Bornscheuer v. Consolidated Traction Company.

*Negligence—Street railways—" Stop, look and listen."*

In an action against a street railway company to recover damages for. personal injuries, it is not enough for the plaintiff to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he drove directly in front of a moving car. ·

In an action against a street railway company to recover damages for personal injuries sustained in a collision between a wagon and an electric car, a nonsuit is properly entered where the witness for the plaintiff who saw the whole occurrence testifies that the plaintiff did not look when he turned his horses from the street to the track where he was struck, and the plaintiff's own testimony as to the distance at which he said he saw the car when he turned, was shown to be incorrect by actual measurement in connection with the highest speed of the car mentioned by any of the witnesses.

*Evidence—Jury—False or mistaken witness—Duty of court.*

When with the. certainty of an infallible mathematical test applied to the testimony of a witness, he is found to be mistaken in a material matter, it would be a travesty upon justice to allow a jury to consider such testimony, and a license to them to render a false instead of a true finding. Such testimony, is either intentionally false or mistakenly so; and in either case the court should instruct the jury to disregard it.

Argued Oct. 25, 1900. Appeal, No. 141, Oct. T., 1900, by plaintiff, from order of C. P. No. 2, Allegheny Co., July T., 1898, No. 369, refusing to take off nonsuit in case of Adam Bornscheuer v. The Consolidated Traction Company. Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ. Affirmed.

Trespass for personal injuries. Before White, P. J.

The facts are fully stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Levi Bird Duff*, with him *L. B. D. Reese*, for appellant.— To establish contributory negligence, the negligence of the in-

jured must be the clear and unavoidable inference from undisputed facts before the court can pronounce it as matter of law: McGovern v. Union Traction Co., 192 Pa. 344.

If there is a doubt on the question of contributory negligence, it must go to the jury: Kohler v. Penna. R. Co., 133 Pa. 346 ; Ely v. Pittsburg, etc., R. R. Co., 158 Pa. 233 ; Callahan v. Phila. Traction Co., 184 Pa. 425 ; Jackson v. Pittsburg, etc., Traction Co., 159 Pa. 399 ; Devlin v. Beacon Light Co., 192 Pa. 188 ; McGovern v. Union Traction Co., 192 Pa. 344 ; Raulston v. Phila. Traction Co., 13 Pa. Superior Ct. 412.

*J. H. Beal*, with him *P. C. Knox* and *James H. Reed*, for appellee.—It was the absolute duty of the plaintiff to look for the approaching car, and to do this immediately before he crossed the track: Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180 ; Carroll v. Penna. R. Co., 12 W. N. C. 348.

OPINION BY MR. JUSTICE BROWN, January 7, 1901 :

The contributory negligence of the plaintiff was the reason given by the court below for entering the judgment of nonsuit. On November 17, 1897, he was driving eastward on Fifth avenue, in the city of Pittsburg, on which are the double tracks of the defendant. The avenue is sixty feet wide. The distance from the tracks to the curb on each side is fourteen feet. While so driving on the south side of the tracks, the plaintiff undertook to cross them at a point where Ivy street runs to, but does not intersect Fifth avenue, his intention having been to go northward on said street. He was nearly across the first or south track when the car of the defendant company going eastward on it struck the rear of his wagon, throwing him into the street and causing the injuries complained of. His testimony was that just as he started to cross the track he looked and saw the car at least 100 yards from him, and he thought he had time to get over. When asked whether he was not guessing at the distance, his reply was, " It was a good piece ; it was the other side of the street yet." The street to which he referred was Bellefonte, distant west of Ivy street by actual measurement, according to the testimony of the engineer called, $477\frac{36}{100}$ feet. The plaintiff and his witnesses testified to the rapid speed of the car, the highest rate named being twenty-five

or thirty miles an hour. If the car was, as the plaintiff distinctly states, west of Bellefonte street when he looked for the purpose of determining whether he could cross the tracks with safety, and was moving at the highest speed named, at least eleven seconds must have intervened from the time he saw it until it struck him, and in that interval, driving as he says he was—a little faster than a walk—he could not only have crossed the first track, but the entire width of the avenue, and been safely on his way on Ivy street. The conclusion is irresistible that the witness was mistaken as to the distance between him and the car when he started to cross the track, and the jury should not have been allowed to believe him. In Carroll v. Penna. R. Co., 12 W. N. C. 348, we held that "it is in vain for a man to say that he looked and listened, if in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive;" and it is equally true that when, with the certainty of an infallible mathematical test applied to the testimony of a witness, he is found to be mistaken in a material matter, it would be a travesty upon justice to allow a jury to consider such testimony and a license to them to render a false, instead of a true finding. Such testimony is either intentionally false or mistakenly so; and, in either case, the court should instruct the jury to disregard it. As the plaintiff himself was so manifestly mistaken as to the distance between him and the car, we find upon turning to the testimony of Dr. E. S. Montgomery, who saw the whole occurrence, that the collision was clearly brought about by his own contributory negligence. This witness intelligently told what he saw, and the following, taken from what he says, can leave no doubt as to what the court below should have done: "Q. Doctor, did you have your eye on the driver of this wagon? A. I was trying to watch them all. Q. You did have your eye on them? A. Yes, sir. Q. Did he look to see if the car was coming? A. I don't think he did. Q. Before he started across? A. I don't think he turned back. Q. You watched closely to see? A. Yes, sir. Q. When he started to cross the car was so close at that time that you were apprehensive there would be a collison? A. Yes, sir. Q. And your apprehension was well founded? A. It certainly was. Q. He was driving right along the side of the far track from you, wasn't he? A. Yes, sir. . . . Q. Could

you tell us then, doctor, to the best of your judgment, about how far the car was back when he made any attempt to turn over? A. I couldn't answer that positively. Q. It was so close, however, that you felt sure there was going to be a collision? A. I felt sure, unless the motorman slowed up there would be, and the gentleman driving the wagon, I don't think he slowed up from the little trot they were on; but it looked to me as if there was bound to be a collision at the speed at which he was coming. Q. In order to clear the track, doctor, about how far would he have to drive from his position when he began to turn? You understand my question? He was driving along side of the right-hand track as you go to East Liberty? A: Yes, sir. Q. And he turned his horses right across that track? A. Yes, sir. Q. The horses cleared it but the wagon did not. Now can you give us your best judgment as to how far his horse had to go from the moment he turned until he would clear that track? A. I wouldn't judge over thirty feet. Q. And wouldn't that be a very liberal estimate? A. That would be a very liberal estimate. Q. You are allowing for the wagon in that I presume? A. Yes, sir. Q. But taking the horse alone? A. Judging the horse alone, he would have to go no more than fifteen feet possibly, if you allow to the rear—from the nose of the horse to the rear of the wagon, it would be very short. Q. In other words, he turned almost directly in front of the car. A. He turned pretty closely in front of the car, yes, sir." The collision could not have happened but for the carelessness of this unfortunate appellant, and nothing more need be said.

The judgment is affirmed.