Riley *v.* McNaugher, Appellant.

218

Argued January 22, 1935. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey, John D. Keith, W. C. Sheely* and *Thomas P. Trimble, Jr.,* for appellant.

*Richard L. Bigelow, J. Donald Swope* and *Carl E. Kirschner,* for appellee.

Opinion by Mr. Justice Simpson, April 1, 1935:

As the result of a collision between an automobile owned and being operated by plaintiff's husband and another automobile, owned and being operated by defendant, plaintiff's husband was so severely injured that he died a short time thereafter. Alleging that the collision was due to the negligence of defendant, plaintiff, on behalf of herself and her minor children, sued to recover damages from him. These the jury awarded to her, and the trial judge having refused defendant's motions for judgment non obstante veredicto and for a new trial, and

judgment having being entered on the verdict at his express direction, defendant prosecuted the present appeal. As we are clearly of opinion that the evidence shows the collision would not have happened if plaintiff's husband had not been contributorily negligent in the operation of his car, we shall confine ourselves to this point alone, also limiting ourselves, in the statement of the facts, to those which bear upon the question of contributory negligence.

The accident happened about midday of August 19, 1932, at the intersection of the Lincoln Highway and the Carlisle-Hanover Turnpike at Cross Keys in Adams County in this State. Plaintiff's husband's car was moving northward on the turnpike, and defendant's car was moving eastward on the highway. When her husband was nearly at the intersection, plaintiff says he stopped the car, looked in both directions and then moved forward. His view westwardly along the highway was, at that point, obscured by a house, some trees and a telegraph pole, located at the southwest corner of the two roads. These so obstructed his view in that direction, that he could see only about 75 feet. This he knew for he had traveled over the crossing for fifteen years. As he moved forward the first part of the highway to which he would come was that over which traffic moved from west to east, that is from the direction as to which his vision was thus obscured, and from which defendant's car approached. As he neared the highway, the house, trees and pole obstructed his vision less and less, and he could see further and further westwardly along the highway, until, when he reached its southernmost line, he could see 700 to 800 feet in that direction.

An automobile driver does not do his whole duty, when about to cross another highway, by taking one look and then moving forward. He must continue to look while crossing, and a failure so to do is contributory negligence: Byrne et al. v. Schultz, 306 Pa. 427; Peters v. Atlas Powder Co., 313 Pa. 115. It is particularly so in cases like the present where the view is obstructed at the

place where the driver has stopped. Whether a failure to stop again under such circumstances is negligence, we need not consider. A failure to continue looking we again decide to be negligence.

This conclusion is emphasized in the instant case by section 1014 (c) of the Vehicle Code, as amended by section 2 of the Act of June 22, 1931, P. L. 751, 797, which provides that "The driver of a vehicle entering a through highway . . . which has been established as such under the provisions of this act, shall yield the right of way to all vehicles approaching in either direction on such through highway." The Lincoln Highway was such a through highway, and was so marked at its intersection with the Carlisle-Hanover Turnpike, where this accident happened.

When, then, plaintiff's husband approached the intersection he knew that motorists on the highway had the right of way, and could operate their cars in reliance upon that legal right. This was notice to him to take such additional care before entering the highway, as, in view of that circumstance, was reasonably required for safety, and to continue exercising such care until he had completed the operation of crossing. The least the one crossing could do was to look carefully before entering on the crossing and to continue thus looking until he had completed the crossing.

That plaintiff's husband did not look again, after he started forward, is testified to by plaintiff herself:

"Q. Hadn't you looked to the left again after you started until you were in the center of the intersection [where the collision took place]?

"A. No, only when I saw this car coming towards us, that is what drew my attention when Mr. Riley [her deceased husband] leaned over the wheel."

And again: "Q. Just answer this please: You have testified I think that your husband came up there to the intersection, stopped the car, looked both ways, and then went on? A. That is all he did. Q. Stopped the car,

looked to the left and the right and then started across? A. He looked first to the left, then to the right and then started across."

Appellee seems to think that because plaintiff testified that she did not see defendant's car until it was about 25 to 30 feet away, that this shows it was not visible before that time. It rather shows a failure to continue looking. Had her husband attentively looked he could have seen, on that clear midday 700 or 800 feet westwardly along the highway, which was straight for that entire distance, and that extended vision continued the entire time he was driving across the highway. There is no contention that there was any defect in his or her eyesight; hence it is idle to say he looked but did not see it, because if he had attentively looked he must have seen it: Bornseheuer v. Traction Co., 198 Pa. 332, 334; Lessig v. Reading Transit & Light Co., 270 Pa. 299; Barton v. Lehigh Valley Transit Co., 283 Pa. 577.

The court below has a different but an equally inefficacious excuse. It says that plaintiff may recover because section 1014 (c) of the amended Vehicle Code, partially quoted above, further says: "This provision shall not operate to relieve the driver of any vehicle being operated on a through highway from the duty to drive with due regard for the safety of vehicles entering such through highway, nor shall it protect the driver of any vehicle on a through highway from the consequences of an arbitrary exercise of such right of way." This provision does not operate, however, to give a plaintiff who has been contributorily negligent a right of action he would not otherwise have had. If it did, then a statute which was intended to give additional rights to the driver on a through highway, would take from him rights which he would have had had he been using an ordinary street or road. This is an impossible conclusion under well settled rules of construction.

This view of the case is clearly expressed in Dougherty v. Merchants Baking Co., 313 Pa. 557, and Peters v. Atlas

Power Co., 313 Pa. 115, and we need now but reaffirm the principle therein set forth.

The judgment of the court below is reversed and judgment is here entered for defendant non obstante veredicto.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I dissent from the majority opinion in this case and would affirm the judgment of the court below. The majority opinion imposes entirely too high a standard of care upon victims in automobile crossing accidents of this kind—a degree of care which is much higher than that which has been uniformly required by this court in accidents at *railroad* crossings under circumstances paralleling the circumstances here. This court said in Siever v. Pgh., C., C. & St. L. Ry. Co., 252 Pa. 1, 8, 97 A. 116: "*. . . When he [a driver] comes to a standstill at a usual stopping place, where he can get some view of the tracks, whether he should go forward to a 'better place to look,' is a question for the jury to determine.*" (Italics supplied.) In Messinger v. P. R. R. Co., 215 Pa. 497, 64 A. 682, this court held that where the plaintiff stopped at a point from which, at the time, he had a view of only 80 feet in the direction of the approaching train, *since he had stopped at the customary place, it was for the jurors, and not for the court, to say whether he had exercised due care.* In Hoffman v. Pittsburgh & Lake Erie R. R., 278 Pa. 246, 122 A. 274, this court held that if the place where the victim stopped before entering upon a railroad crossing was the customary stopping place to look and listen for approaching trains, and *owing to obstructions* his view of the tracks was limited to approximately 100 feet in the direction from which the train came, the question whether he should have gone forward to a better location to look, is for the jury. To the same effect are Hanna v. Phila. & Reading Ry. Co., 213 Pa. 157, 62 A. 643; Calhoun v. P. R. R. Co., 223 Pa. 298, 72 A. 556, and Leftage v. Balt. & Ohio R. R. Co., 250 Pa. 452, 95 A. 581.

In my judgment, this court should not in *automobile crossing* cases, any more than it does in *railroad crossing* cases, lay down the rule that a victim is guilty of contributory negligence *as a matter of law* when by the exercise of the *highest possible degree* of care he might have avoided the injury. Such a high degree of care is a standard alien to the administration of justice. As Mr. Justice CARDOZO aptly said, speaking for the Supreme Court of the United States, in the recent case of Pokora v. Wabash Ry. Co., 292 U. S. 98: "No doubt it was his [the victim's] duty to look along the track from his seat, if looking would avail to warn him of the danger. This does not mean, however, that *if vision was cut off by obstacles* [italics supplied], there was negligence in going on, any more than there would have been in trusting to his ears if vision had been cut off by the darkness of the night. [Citing case.] Pokora [the victim] made his crossing in the day time, but like the traveler by night he used the faculties available to one in his position. [Citing cases.] *A jury, but not the court* [italics supplied], might say that with faculties thus limited he should have found some other means of assuring himself of safety before venturing to cross. . . . In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of a jury." The above perfectly describes the situation in which Riley (the victim here) found himself. The testimony offered in behalf of plaintiff is that Riley stopped at the broad white line, which indicates the usual, customary, and proper stopping place for a driver to stop before crossing the Lincoln Highway. Judge McPHERSON clearly points this out in his opinion discharging the motion for judgment notwithstanding the verdict. This white line is conspicuous even in the exhibits offered in this case, notably plaintiff's "Exhibit No. 1." If the Lincoln Highway had been a railroad instead of a motor highway, Riley would not under the invariable decisions of this court be ad-

judged guilty of contributory negligence as a matter of law because he did not go forward where he could have obtained a longer view toward the west (from which direction the danger that overtook him was approaching). He stopped at the place which the broad white line, presumably put there by the state highway department, bade him "stop," and sitting in his car at that point he had a view toward the west of approximately 100 feet. A large tree and two telegraph poles prevented a longer view. Plaintiff's "Exhibit No. 1" reveals this fact clearly. That there were these obstructions of view also appears from the testimony. The learned judge who heard this case and who undoubtedly is familiar with this road intersection in his own county, refers to "some trees and telegraph poles located on the south side of the Lincoln Highway which obstructed his [Riley's] clear vision." We cannot without establishing a different rule than what we have established in railroad crossing cases, declare as a matter of law that Riley was guilty of contributory negligence on the theory that if he had driven his car forward five or six feet further, bringing him virtually upon the Lincoln Highway, he would have had a view down the road a much greater distance. The only degree of care required in administering justice in negligence cases is that which is considered due care when tested by the standards of ordinary human conduct. As Mr. Justice CARDOZO said in the Pokora Case, (supra): "Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life." In Pittsburgh City v. Grier, 22 Pa. 54, 68, this court, in an opinion by Mr. Justice BLACK, used the phrase, "common prudence" as indicating the degree of care required by plaintiffs, owners of a boat, who sued the City of Pittsburgh for damages arising from negligence on the part of the city. In Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300, 305, this court, in an opinion by Mr. Justice AGNEW, said: "There is no absolute rule as to negligence to cover all cases. That which is negligence in one case, by a change

of circumstances will become ordinary care in another, or gross negligence in a third. It is a relative term depending upon the circumstances, and therefore is always a question for the jury upon the evidence, but guided by proper instructions from the court."

It is clear to me that in this case Riley's conduct was that of an ordinarily prudent person. Seeing the white line on the highway as indicating the proper place to stop, he naturally assumed that if he stopped at that point and looked in both directions, he would be able to obtain a view sufficient to assure him that with no vehicle *then* in sight he could cross the highway before he would be overtaken by any other vehicle going in either direction at a rate of speed sufficient to overwhelm him before he got across. He had a right to assume that any motorist on that highway would proceed at a rate of speed which would be lawful and reasonable near and at an intersection. According to the evidence, when this accident happened, Riley, after stopping at the white line, was proceeding across the Lincoln Highway at the cautious rate of speed of about ten miles an hour, while the defendant, McNaugher, was traveling at a rate of speed described by one witness as "above 40 miles an hour" and by Mrs. Riley as "terrific speed."

All motorists are required by due care to slacken their speed at road intersections. On the other hand, those in charge of railroad trains are not expected to slacken the train's speed at public crossings because to do so would interfere with the railroad's performance of essential public service. For these reasons, a person about to enter a railroad crossing should be *more* careful than a person about to enter a main highway crossing for the former has no reason to expect a railroad train's speed to be reduced at public crossings while the latter has every legal and moral right to expect an automobile's speed on *any* highway to be reduced at public crossings. Section 1014 (c) of the Motor Vehicle Code of 1931, P. L. 751, at 797, declares that "the driver of a vehicle entering a

through highway or stop intersection . . . shall yield the right of way to all vehicles approaching in either direction on such through highway. This provision shall not operate to relieve the driver of any vehicle being operated on a through highway from the duty to drive with due regard for the safety of vehicles entering such through highway, nor shall it protect the driver of any vehicle on a through highway from the consequence of an arbitrary exercise of such right of way." Riley did yield "the right of way" when he *stopped,* and viewed the highway in both directions. The last half of that section is, in my judgment, the more pertinent to this case because Riley's care or want of care must be viewed in the light of *all the attending circumstances* and *one* (and an *important* one) of the attending circumstances was that under the laws of Pennsylvania it was the duty of defendant in driving his car on this through highway "to drive with due regard for the safety of vehicles [in this case Riley's] entering such through highway," and it was also his (the defendant's) statutory duty *not* to exercise his "right of way" *arbitrarily* (which duty this defendant wholly failed to perform). Riley had every right to assume that the driver of a car coming from the west would see the trees at this intersection heavy with foliage (the date being August 19th) and obviously obscuring the view of a driver situated as Riley was, and that such a driver coming from the west would reduce his speed accordingly.

The majority opinion says: "When plaintiff's husband approached the intersection he knew that motorists on the highway had the right of way, and could operate their cars in reliance upon that legal right." I contend that Riley as well knew that this "legal right" of McNaugher's or anyone else traveling on that highway was qualified by the statutory provision that that right must be exercised *not* arbitrarily *but* "with due regard to the safety of other vehicles entering upon such highway." In Thompson on Negligence, volume II (2d ed.), section

1612, that author says: "It is not negligence not to anticipate that another person will be negligent or fail to do his duty. This principle ought to be of peculiar force with reference to the conduct of a person who is driving an instrument of great danger, which may become at railway crossings a mere murder machine, if it is allowed to approach at an excessive or an unlawful rate of speed, or without such signals or warnings as will apprise the traveling public of its coming." An automobile approaching crossings is a much more dangerous "murder machine" than is a locomotive. Locomotives make a loud noise, emit smoke, and, as they approach crossings, their bells are ringing and their loud whistles blowing, while, on the other hand, rubber-tired automobiles are comparatively noiseless, practically smokeless, and most of them do not give any warning, or at least any *adequate* warning, as they approach crossings. This court said in Weiss v. Pittsburgh Rys. Co., 301 Pa. 539, 152 A. 674: "He [the plaintiff] had a right to rely on the assumption that all persons will use ordinary care to protect him and the mere failure to anticipate the negligence of another does not defeat an action for the injuries sustained." We also said in Hayes v. Schomaker, 302 Pa. 72, 76, 152 A. 827: "A driver is not obliged to anticipate and guard against a collision with a car driven at a high speed and in violation of rules governing the operation of automobiles on the highways." In Adams v. Fields, 308 Pa. 301, 162 A. 177, we cited with approval the following: " 'Everyone to whom a duty is due has a right to assume that it will be performed': 20 R. C. L., page 117, section 101; Adams v. Gardiner, 306 Pa. 576, 160 A. 589."

The majority opinion says that an automobile driver in crossing another highway "must continue to look while crossing, and a failure so to do is contributory negligence." I think this is imposing entirely too exacting a rule. In the first place, no automobilist attentive to the driving of his car can continue to look long *in any one direction* unless that direction is *forward*. Riley, before

228

he entered the crossing, "looked to the left, looked to the right and started off" (as his wife testified). That is exactly what any prudent driver would have done. By the time he looked to the left and to the right, and released his brakes, shifted his gears, and started his car, three seconds could easily have elapsed. The defendant traveling 40 miles an hour would have in three seconds traveled 175 feet. What was said by the Supreme Court of the United States in the Pokora Case, supra, if for the phrase "a train or a loose engine" there is substituted the word "automobile," would be entirely applicable here. On page 105 of that opinion, Justice CARDOZO makes this statement: "One must remember that while the traveler turns his eyes in one direction, a train or a loose engine may be approaching from the other." Furthermore, in the instant case, it is a legitimate inference from the evidence and from the exhibits that Riley did look toward the west after he reached the highway, saw that the defendant was coming at a high rate of speed and tried to get out of danger. The condition (as revealed by the exhibits) of the two cars that collided, indicates that the defendant when he saw a crash was imminent turned his car to his left and that when the victim saw a crash was imminent he turned his car to his right.

The majority opinion states: "As he [Riley] neared the highway, the house, trees, and pole obstructed his vision less and less, and he could see further and further westwardly along the highway, until, when he reached its southernmost line, he could see 700 to 800 feet in that direction." This statement is apparently based on the testimony of a witness who was asked the following question and made the following answer: "Q. How far to the west of the intersection is the Lincoln Highway straight? A. I should say approximately seven to eight hundred feet." If the majority opinion means that Riley should have pushed his car forward until he himself would have been at the southernmost line of the highway, this would place the *front* of his car at least five or six

feet into the Lincoln Highway. This would be a place of great peril and is something the law nowhere commands a driver to do. Prudence required that Riley stop his car with the front end of the car a short distance back from the southernmost point of the Lincoln Highway, for a position immediately contiguous to a highway is like a position immediately contiguous to a railroad, clearly in the zone of great danger.

The case of Dougherty v. Merchants Baking Co., 313 Pa. 557, 169 A. 753, cited by appellant, is distinguishable from this case. In that case, plaintiff did not prove that the victim had stopped at the customary stopping place; in the case at bar, a white line indicated the customary stopping place and *there* the victim did stop. In the Dougherty Case (though the victim stopped) there was no evidence that he stopped at *the customary stopping place* before he "without giving any signal" started across the road "in a southeasterly direction; . . . his truck was in a diagonal position, facing south, on the far side of the road, when it was struck." The opinion in that case further sets forth: "When he [the defendant's driver] saw Dougherty's truck enter the intersection, defendant's driver turned to the left to pass, but at that instant Dougherty entered *the same lane of traffic* [italics supplied] cutting him off, and the collision resulted. If defendant's driver had had notice of Dougherty's intention to cross to the left side of the road, he could have passed on his own side to the rear of Dougherty's truck." The opinion also characterizes as "doubtful" the alleged obstruction of the victim's view to the north (whence the defendant's car came). The opinion states as the "particularly negligent act" of the victim, his own failure to go south on the main highway on its west side, thereby permitting the defendant's truck to pass him on the east side, the language of the opinion being: "He [the victim] should have realized that the driver of the approaching truck, seeing him turn to the right out of the side street, would expect him to continue on the right side of the

road, and might attempt to pass him in the usual way on his left. Under the circumstances, decedent's entering the highway and attempting to cross it diagonally, without giving any indication of his intention, was a particularly negligent act." The facts in the instant case distinguish it from the Dougherty Case. Here Riley's view toward the west was clearly obstructed by trees and telegraph poles. There is nothing "doubtful" about that fact. He stopped at the customary stopping place. He never got beyond the entering side (i. e., the south) of the road. If the defendant had been running at a fairly moderate rate of speed, he could have easily passed to the left of Riley's car. That Riley hadn't gotten very far on the main highway is indicated by the fact that the full force of the defendant's car struck at a point near the driver's seat, killing Riley, while those in the rear seat were only slightly injured.

If the rule laid down in the majority opinion in this case is to prevail, it will mean that a motorist approaching a main highway, as Riley did, will have to approach, if necessary to a long view, *right up to the main highway,* if he wishes to escape the imputation of want of care. For a motorist to bring his car right up to a main highway is in itself a perilous thing to do. No prudent person would either himself stand at or even a foot or two from a main highway or place his car that close to a main highway while automobiles are whizzing by at the usual rate of 50 to 60 miles an hour. The just rule in these cases is, as it is in railroad crossing cases, that if a person stops at the customary stopping place and then seeing a clear road within his line of vision on either side, starts to cross and is injured, the question of his contributory negligence is for the jury. Riley had every reason to believe that in stopping at the white stop line, he was conforming to the requirements of due care. If in stopping at that place gave him an observation to the west of not more than 100 feet, he had a right to assume that a person coming from the west would slacken up his speed at

this manifestly dangerous intersection. Defendant did not slacken his obviously great speed though, as was testified, when "approaching from the west to the east [as defendant was] on the Lincoln Highway, first you see a red sign—cross roads, a slow sign." If defendant had observed this "slow" order, this fatal accident would not have occurred. Defendant's extreme negligence in this case is established (and, of course, on this motion is not controverted). The contributory negligence of Riley under the authorities presented was, as the court below ruled, a question for the jury. Under section 1016 (b) of the Motor Vehicle Code of June 22, 1931, P. L. 751, 798, it was Riley's duty "to come to a full stop, within a reasonable distance, before entering the intersection." What is a *reasonable* distance cannot be declared as a matter of law but is a jury question and this is particularly true when, as in the instant case, the victim stopped at a distance which the white line indicated as a "reasonable distance" from the Lincoln Highway.

I think the learned trial judge correctly summed up this case in the following language: "In view of the fact that it was testified by the plaintiff's witness that the plaintiff's husband, as he approached this intersection, did stop his automobile at the white line, on the Carlisle-Hanover Turnpike on the side south of the intersection, looked both ways, saw nothing and then proceeded to negotiate the crossing at not more than ten miles an hour; that he had proceeded into the intersection before the compact of the machines occurred, to a position where the front of his machine was at or slightly beyond the medial line of the Lincoln Highway at the intersection, and that immediately before the impact of cars he swerved the car to his right, we are convinced that the question of his negligence was a matter of fact to be determined by the jury."

It is an established principle on a rule for judgment n. o. v. for defendant that "the testimony should not only be read in the light most advantageous to plaintiff, all

conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence": Guilinger v. P. R. R. Co., 304 Pa. 140, 155 A. 293. In this case appellee should be entirely within the benefit of that rule and is also entitled to the benefit of this principle, reiterated in Morin v. Kreidt, 310 Pa. 90, 164 A. 799, (see also Perry v. Ryback, 302 Pa. 559, 565, 153 A. 770, and Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353) : "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care." I can find no evidence in this case so overcoming that presumption as to justify this court in declaring Riley negligent as a matter of law.

I would affirm the judgment of the court below.