## Glancy, Appellant, *v.* Meadville Bread Company et al.

Argued December 6, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*A. L. Thomas,* of *Thomas & Kiebort,* for appellant.

*Thomas D. Caldwell,* of *Caldwell, Fox & Stoner,* with him *Franklin B. Hosbach* and *Leland J. Culbertson,* for appellees.

OPINION BY MR. JUSTICE MAXEY, January 6, 1941:

The plaintiff, Harley W. Glancy, brought an action in trespass against defendant to recover damages for personal injuries sustained when he was struck by a truck owned by the Meadville Bread Company and operated by A. S. Terry as its agent. Defendant did not set up its agent's freedom from negligence. It contended that

plaintiff was himself contributorily negligent, and this contention the court below upheld and entered judgment for defendant n. o. v., after the jury returned a verdict for the plaintiff in the sum of $13,074.90.

On December 7, 1937, at about 7 a. m., plaintiff, accompanied by his wife, was driving his automobile in a southerly direction on Highway Route 98 towards Meadville, Pa. He was then nearly 56 years of age. Plaintiff had difficulty with the car's cooling system; it was overheating. He stopped the car about six miles north of Meadville on the west side of the highway and opposite a farm house across the highway. The two left wheels of the car were on the concrete pavement about two and a half feet. The improved portion of the road was about eighteen feet in width. At the time the ground was covered with snow and more was falling.

Plaintiff testified that at the time mentioned "it was pretty dark and just breaking daylight, that he went to the farm house, borrowed a pail" and got a pail of water from the pump "and came back to the car. . . . I poured water in the radiator and filled it up. Then I stopped and looked both ways, to the south and to the north and everything was clear that I could see. I saw no lights or nothing. I started to take the pail back to the house." He said he started to cross in a diagonal or northeastern direction and that he was "walking fast to the pump." When he had taken a "few steps" he was struck by defendant's truck which was being operated in a northerly direction upon the eastern and its right side of the highway. The truck was equipped with a governor limiting the speed thereof to 35 miles, not to exceed 38 miles per hour.

On cross-examination plaintiff testified that from where he looked while standing by the left side of his car he could see north on the highway for a distance of "three or four hundred feet" and south for a distance of "an eighth of a mile . . . or 660 feet," that his car was 18 feet "south of the pump," and that he walked in a northeast direction "in a straight line towards the

pump." He was asked: "You didn't look in either direction after you started toward the pump?" He answered: "I looked before I started—looked both ways; and after I got started, I walked fast to the pump." He also said that he was struck when he was "past the center of the highway" after going only "a few steps" and that "five steps would put a fellow across the road, practically." Plaintiff suffered a compound fracture of bones in one leg and a comminuted fracture of bones in the other leg.

Plaintiff's wife corroborated her husband as to his looking both ways before he started to cross the highway. She testified also that the lights of her husband's car were "on dim" as it stood on the highway, that the truck did not have lights on it when first she saw it but "there was a flash of a light when the oncoming car was" opposite her husband's car, that she did not see her husband get hit but saw him lying on the pavement about two or three feet from its eastern edge and about five feet back of the rear of the truck after it stopped, and that the truck stopped about 130 feet north of plaintiff's parked car. On cross-examination she was asked these questions and gave these answers: "How far towards the south was this truck from the car in which you were sitting, the first time you saw it? A. I would say the radiator of the car was a few feet from the radiator of our car. . . . Q. The first time you saw this truck it was within a couple of feet from the radiator of your car, is that right? . . . A. A few feet, I might say five feet, maybe a little more, but no less."

Defendant Terry, the driver of the truck, testified that he saw plaintiff's car and that when the front bumpers of the two cars were about opposite, he saw a pair of red rubber boots from four to five feet ahead of the truck to his right and that the right end of the front bumper of his truck struck the plaintiff.

Mr. Frank Winters, who was called on behalf of defendants, testified that at the time in question he was in the doorway of the farm house where plaintiff got the

pail of water and that when plaintiff started from his car to cross the highway the truck was "not more than 20 feet away" from plaintiff's car, and that he had observed the truck before then, that its lights were on and were plainly visible. He testified that when the truck stopped after hitting the plaintiff, the "rear of the truck" was "not more than 35 feet from the front of" plaintiff's car. He also testified that about ten minutes after the plaintiff was brought into the farm house, his wife said to him: "What was the matter, Harley, didn't you see those lights?"

In its opinion entering judgment n. o. v. the court below said: "While a pedestrian may cross a road in the open country, as was attempted here, when he does so he must exercise a higher degree of care than at a public or regular crossing. He cannot be oblivious to danger; he cannot walk by faith. People are not entitled to walk across roads with closed eyes and inattentive minds. He must heed what he is doing and where he is going or he cannot complain of the consequences. A pedestrian who crosses the left-hand side of a road without looking to the right might often find his further progress blocked and be in peril between traffic moving in both directions. *Weaver v. Pickering,* 279 Pa. 214 [123 A. 777]; *Virgilio v. Walker,* 254 Pa. 241 [98 A. 815]; *Arnold v. McKelvey,* 253 Pa. 324 [98 A. 559]; *Harris v. Commercial Ice Co.,* 153 Pa. 278 [25 A. 1133]; *Anderson v. Wood,* 264 Pa. 98 [107 A. 658]. . . . It clearly appears from the testimony that the truck must have been a much closer distance—within not to exceed 30 to 35 feet—from the point of accident, when plaintiff looked and started across the road, as he took but a few hurried steps—how many we do not know—before he was struck by the truck. Plaintiff did not look to the south again after he had started across the highway. Had he done so, undoubtedly he would have seen the truck and could have avoided the accident by remaining in a place of safety until the truck had passed. Under such circumstances,

can the plaintiff now credibly say that he looked and failed to see defendant's truck which must have been within his clear view when he started across the highway? We are of the opinion that he cannot. He was struck almost immediately upon entering the path of defendant's vehicle."

What this court has said in railroad crossing cases is pertinent here. " 'It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive [or automobile]': [*Bornscheuer v. Traction Co.*, 198 Pa. 332, 47 A. 872]. . . . Common prudence requires alert watchfulness and celerity in getting out of a zone of danger as well as caution in getting into such a zone. . . . 'When human life [or one's bodily welfare] is at stake, the rule of due care and diligence requires everything that gives reasonable promise of its preservation to be done, regardless of difficulties or expense:' 20 Ruling Case Law, p. 25, sec. 18": *Hawk et ux. v. Pa. R. R.*, 307 Pa. 214, 160 A. 862. At all times individuals have been required to use their senses, particularly their senses of hearing and seeing, to save themselves from bodily harm. Our mechanical age only increases the necessity for this primitive vigilance. When a person omits to use his senses and walks thoughtlessly into a place of danger, he is guilty of negligence, and this contribution to his own injuries deprives him of any right to demand compensation from others who contributed to it.

In view of plaintiff's own testimony that he looked in both directions, i.e., up and down the highway and "everything was clear that" he "could see" and in view of the substantial distance that he *could* see in each direction, if he had looked carefully, as it was his duty to do, the conclusion is inescapable that plaintiff did not look carefully. Appellant places much emphasis on the testimony of Mrs. Glancy as being sufficient to carry this case to the jury. She testified that defendant's car

did not have lights on "the first that I saw it." She was then asked: "Did it afterwards have lights on?" She then added: "I recall there was a flash of light when . . . the two engines [were] you might say, abreast." In view of the fact testified to by Mrs. Glancy that "it was just breaking day, just a semi-darkness, and snowing," even the absence of lights on defendant's car, if accepted as a fact by the jury in the face of strong countervailing testimony (as, the jury apparently did accept it) would not under these circumstances excuse the plaintiff from seeing or hearing the oncoming car. If the visibility was one of "semi-darkness," this oncoming truck *could* nevertheless have been seen coming down this "comparatively level" and almost straight road. A condition of "semi-darkness" should have led the plaintiff to increase his vigilance in crossing this much traveled highway. If he had used the vigilance the situation called for, he would have become aware of the oncoming truck. The civil engineer and surveyor, who testified in this case, described the part of the road with which we are concerned as follows: "Beginning at a point two hundred fifty feet south of the house it is straight for eight hundred feet. The curves are ordinarily called slight curves. The one in front of the house is designated in engineer palaver as a two degree curve which means the deflection or turning in a distance of one hundred feet is a two degree arc." He characterized the curve in front of the Lybarger home where plaintiff got the water as "slight." He also said that on December 7, 1937 (the date of the accident), there were no "permanent obstacles along the sides of the roadway and close to the pavement of the roadway which would obstruct one's vision using the highway."

In the face of these incontrovertible physical facts as to the place of the accident, the testimony of plaintiff and of his witness did not make out a case free from contributory negligence and therefore he was not entitled to go to the jury.

The judgment is affirmed.