Campbell *v.* Balis, Appellant.

Argued November 15, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Ralph S. Croskey,* with him *Croskey & Edwards,* for appellant.

*Henry D. O'Connor,* with him *Joseph W. O'Connor,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 4, 1955:

On his way home from his day's work, James J. Campbell, school janitor, alighted from a street car at the northeast corner of Midvale Avenue and Henry Avenue in Philadelphia and waited to cross Midvale

Avenue in order to board at the southwest corner of the intersection a bus which would take him to his home in Roxborough. Midvale Avenue runs east and west and measures 40 feet from curb to curb, with 20 foot sidewalks. It accommodates double car tracks, separated by an empty space known as the "dummy" 4½ feet wide. Henry Avenue runs north and south with a width of 60 feet above Midvale Avenue and 50 feet south of Midvale.

When the traffic light beckoned southbound traffic to proceed, Campbell started across Midvale Avenue, traversed the first street car track, passed over the "dummy" and the second track, and was about to mount the sidewalk when the automobile of the defendant, in defiance of a red light, dashed through the crossing and struck the plaintiff with such force as to throw him over the top of the car. The plaintiff landed on his head and sustained serious injuries.

In the resulting lawsuit the jury returned a verdict in his favor. The defendant moved for judgment n.o.v., which was refused, and this appeal followed.

The defendant contends that the plaintiff was guilty of contributory negligence as a matter of law because he stated that he did not see the defendant's automobile until just before it struck him. This, the defendant argues, shows that the plaintiff was careless and inattentive. In support of his position, defendant's counsel cites the case of *Harris v. Commercial Ice Co.*, 153 Pa. 278, where this Court reversed a judgment entered in favor of the plaintiff because of his contributory negligence. But in that case the plaintiff was struck by an ice wagon the instant he stepped off the curb. Nor was there any green light (the accident happened in 1892) inviting the plaintiff to enter the intersection on the assumption that traffic was clear

for him to cross at that particular time and place. In the case at bar of course the facts are entirely different. Campbell was not struck as he left the curb but after he had practically negotiated the whole crossing and while the traffic light was continuously in his favor.

Defendant's counsel contends that even though the plaintiff had a green light, he was duty bound to meticulously study the traffic situation before he embarked on the passage across the street. If a pedestrian before committing himself to a crossing must study the characteristics of every vehicle at the intersection, noting its stops, movements, speed, jerks and other vagaries, he will never get to the other side because, by the time he finishes his inventory, the light will have changed to red. And then when the green light returns he will be compelled to renew his traffic analysis *ab initio* for, by that time, a new traffic situation will have presented itself. The law is not so unreasonable.

The facts in the case of *Newman v. Protective M. S. Co.*, 298 Pa. 509, are sufficiently analogous to those in the case at bar to justify reference to them. There, the plaintiffs (husband and wife) were injured when a truck, disregarding a traffic signal, struck them down at an intersection. In the court below the Trial Judge entered a compulsory nonsuit because the plaintiffs had testified that they did not see the truck as they started across the street in obedience to a green light. This Court set aside the nonsuit and said: "It is the contention of the appellee [the truck company] that although the traffic light was set in appellants' [plaintiffs'] favor, they should have continued as they crossed Pine Street to look for traffic at their right. *It is often impossible for this to be done at crowded intersections. They were not bound to anticipate that*

*the defendant's driver would disregard the traffic signal.* [citing cases] *Indeed they had the right to assume that the driver of defendant's truck would be regardful of his duties to others on the highway.* [citing cases] We have laid down the rule in a number of cases that at crossings the drivers of all motor vehicles must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to *pedestrians having the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down,* and we have categorically said that, 'Care at street crossings is the highest duty of motorists.' " (Emphasis supplied.)

Judge ALESSANDRONI, the learned judge in the court below, cogently expressed the law on this point when he said: "When a pedestrian commits himself to a crossing, having used due care up to that point, a negligent actor cannot complain because the pedestrian assumed that the actor would obey the law and not carelessly run him down. Such a pedestrian need not continuously swivel his head from side to side in order to be free of contributory negligence."

The other cases cited by defendant's counsel in his brief are not applicable to the facts in the case at hand because in practically each instance the injured person was struck almost immediately upon committing himself to the crossing. Nor is the fact that the plaintiff in this case hurried across the street to be regarded as evidence of legal contributory negligence. The driver of the bus which the plaintiff was endeavoring to catch testified that the plaintiff waved his thermos bottle to him to hold the bus until he arrived. From this circumstance, defendant's counsel argues that the plaintiff was in too much of a hurry. He should have waited, counsel argues, because "it is no

crime to miss a bus." Counsel goes on then to say in his brief: "It well could be asked what does one do with the minute saved in catching some public conveyance at the expense of a coronary or some other difficulty?" This question opens up a field of philosophical speculation which, as interesting as it is, cannot engage our attention in a lawsuit. If the plaintiff had reasons to catch the bus in order to get home as quickly as possible, it was not for the defendant to decide to save the plaintiff a coronary by hitting him with such force that the plaintiff was catapulted over the top of the car to land on his head. Between a coronary and a brain concussion there can be but little choice.

In any event, the factual situation in this case was one definitely for the jury. In the case of *Mackin v. Patterson,* 270 Pa. 107, the plaintiff proceeded across a street although she saw three automobiles approaching at a distance of over 200 feet. Thinking she had ample time to reach the safety zone, she started rapidly forward, looking ahead and to the north; then again to the south, where she saw defendant's Packard car right upon her, and by which she was struck and seriously injured. The defendant there argued that the plaintiff's action should be declared contributory negligence as a matter of law. This Court rejected the contention and said: "How far the accident happened from the east curb is not definitely shown, but approximately 20 feet; whether plaintiff should have looked again to the south, while walking that distance, depended upon the surroundings, and was for the jury. [citing cases] A pedestrian must exercise continued vigilance while crossing a street (Lorah v. Rinehard, 243 Pa. 231); *but just where he should look depends upon shifting conditions and is a question of fact rather than of law.*" (Emphasis supplied.)

Under the many authorities, there is less reason to argue for judgment n.o.v. in the present case than in the case just quoted from.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

Plaintiff got off a trolley car and walked to the curb. Seeing the light green in his favor, he walked across the street and crossed the westbound trolley tracks. As he was crossing the eastbound trolley tracks, he saw a bus which he wished to board stop at the opposite corner. He started to run without looking to the right or left and never saw defendant's automobile until it was on top of and hit him. In other words, plaintiff walked (or ran) approximately 30 feet across a street without looking to his right or his left until he was hit by the defendant (just after he crossed the eastbound trolley track).

A pedestrian is not allowed to walk and a driver is not allowed to drive across a street or road with closed eyes or an inattentive mind. He must look before he crosses and continue to look as he crosses a street; and he is liable for failure to see and avoid what he should have seen and avoided if he had looked: *Lewis v. Quinn*, 376 Pa. 109, 101 A. 2d 382; *Thompson v. Gorman*, 366 Pa. 242, 77 A. 2d 413; *Riley v. McNaugher*, 318 Pa. 217, 219, 178 A. 6; *Shapiro v. Grabosky*, 320 Pa. 556, 559, 184 A. 83; *Stevens v. Allcutt*, 320 Pa. 585, 587, 184 A. 85; *Grande v. Wooleyhan Transport Co.*, 353 Pa. 535, 538, 46 A. 2d 241; *Scull v. Epstein*, 167 Pa. Superior Ct. 575, 76 A. 2d 245; *Harris v. Commercial Ice Co.*, 153 Pa. 278, 280, 25 A. 1133; *Glancy v. Meadville Bread Co.*, 340 Pa. 452, 17 A. 2d 395...

In *Harris v. Commercial Ice Co.*, 153 Pa., supra, the Court said (page 280) : ". . . People are not entitled to walk the streets with closed eyes and inattentive minds. There is no situation in life, involving danger whether much or little, in which the law does not require a due and proportionate amount of care and attention. Even on a city street a man must heed what he is doing and where he is going, or he cannot complain of the consequences. . . ."

In *Glancy v. Meadville Bread Co.*, 340 Pa., supra, the Court affirmed a judgment non obstante veredicto, and said (page 455) : "In its opinion entering judgment n.o.v. the court below said: '. . . He cannot be oblivious to danger; he cannot walk by faith. People are not entitled to walk across roads with closed eyes and inattentive minds. He must heed what he is doing and where he is going or he cannot complain of the consequences. A pedestrian who crosses the left-hand side of a road without looking to the right might often find his further progress blocked and be in peril between traffic moving in both directions. Weaver v. Pickering, 279 Pa. 214 [123 A. 777] ; Virgilio v. Walker, 254 Pa. 241 [98 A. 815] ; Arnold v. McKelvey, 253 Pa. 324 [98 A. 559] ; Harris v. Commercial Ice Co., 153 Pa. 278 [25 A. 1133] ; Anderson v. Wood, 264 Pa. 98 [107 A. 658]. . . .' "

In *Lewis v. Quinn*, 376 Pa., supra, plaintiff started to drive his car across Roosevelt Boulevard when the light turned green in his favor. After he had gotten across the center lane and still had the green light he was struck by another automobile approaching at right angles. Plaintiff was traveling only 12 to 13 miles an hour; there was no evidence of the speed of the defendant's car. There was no evidence whether plaintiff looked or didn't look for approaching traffic when he entered the intersection of the Boulevard.

Under these facts we held that plaintiff was guilty of contributory negligence as a matter of law, and quoting *Kline v. Kachmar,* 360 Pa. 396, 61 A. 2d 825, said, inter alia (page 114): ". . . 'As to the plaintiff, even though he did have the right-of-way, *it was, of course, his duty to look both to his right and left for* any approaching traffic on College Street *before entering the intersection and to continue so to look while crossing the intersecting street*: Riley v. McNaugher, 318 Pa. 217, 219, 178 A. 6; Shapiro v. Grabosky, 320 Pa. 556, 559, 184 A. 83; Stevens v. Allcutt, 320 Pa. 585, 587, 184 A. 85; Grande v. Wooleyhan Transport Co., 353 Pa. 535, 538, 46 A. 2d 241.' "

In the instant case, if plaintiff had looked, as the law requires him to do, the defendant's car would not have struck him after he had walked approximately 30 feet in the street intersection.

Applying the aforesaid principles to the testimony in the instant case, it is clear that plaintiff was guilty of contributory negligence as a matter of law. I would therefore reverse the judgment of the lower court and grant a judgment non obstante veredicto.