## Smith *v.* Pittman, Appellant.

Argued April 27, 1959.   Before BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Marion R. Lower,* for appellant.

*Joseph J. McIntosh,* with him *Landis and McIntosh,* for appellee.

OPINION BY MR. JUSTICE McBRIDE, June 30, 1959:

This is an appeal from the entry of judgment upon the verdict of a jury for plaintiff, Smith, in a trespass action. Having moved for judgment n.o.v. and for a new trial, defendant, Pittman, asks us to review the propriety of the court's refusal to grant both motions. Plaintiff was walking across West High Street in the

Borough of Carlisle in a southwardly direction in the pedestrian crosswalk which crossed West High Street immediately west of the intersection of Court House Avenue and West High Street. This intersection is more than 100 feet west of the intersection of Hanover and High Streets, the Carlisle public square. West High Street is approximately 57 feet wide and has four traffic lanes, two lanes for eastbound and two lanes for westbound traffic. It is one of the most heavily travelled pedestrian crosswalks in Carlisle.

When plaintiff started to cross the street no traffic was moving in the two lanes nearest to him (the lanes for westbound traffic) but traffic was moving eastward. All traffic was stopped at the Carlisle square.

When the plaintiff reached the center of West High Street, he stopped while cars passed eastward in front of him. The northern of the two eastbound lanes filled with cars from the square back to Court House Avenue. Three or four cars were stopped to his left in the south lane of eastbound traffic. There was space behind them for several cars back to the intersection of Court House Avenue and West High Street.

To his right, a car stopped immediately west of the crosswalk in the north of the two eastbound traffic lanes, and several vehicles stopped in back of this one. He did not see any cars moving east in the south lane and started walking again. When he got to the middle of the hood of the car which was stopped to his right, he looked right (or west) and saw defendant's car approaching. It was from 50 to 70 feet away, traveling between 10 and 15 miles per hour and decreasing speed. Plaintiff then turned his head left (or east) to observe the status of the walklight at the square and then proceeded to take several steps and upon looking to the west for a second time, he found the defendant's automobile directly upon him.

Plaintiff testified that defendant's left front wheel came in collision with him first. Then the outside rear view mirror of the car hit his right shoulder.

Defendant testified that she looked for pedestrians as she approached the crosswalk, but she did not see anyone. She did not remember whether she looked to her left the instant she entered the crosswalk. The defendant admitted that if she had been looking directly ahead and to the left as she got up to the crosswalk she would have seen the plaintiff immediately. She stopped her car instantly after the collision, with the rear wheels still inside the crosswalk after her car was stopped. The crosswalk was 7 feet wide.

On this state of facts, which are not substantially disputed by the parties, we are asked to say as a matter of law either that defendant was not negligent or that plaintiff was contributorily negligent. We cannot affirm either proposition. It is true that a driver of a motor vehicle approaching a crosswalk is not bound to anticipate that a pedestrian might suddenly run out behind a parked automobile and against the fender of his car. *McAteer v. Highland Coffee Co.*, 291 Pa. 32, 139 Atl. 585 (1927). Here, however, although such a conclusion might have been arrived at by the jury in the light of defendant's testimony, such a conclusion could not be arrived at by the court as a matter of law. The jury were perfectly justified in finding that plaintiff was clearly visible to defendant had the defendant used the requisite care in the operation of her automobile. *Smith v. Wistar*, 327 Pa. 419, 194 Atl. 486.

Since the accident happened at a well recognized crosswalk the pedestrian had the superior right of way and the defendant was required by the law to be highly vigilant and maintain such control over her car that she could stop it on the shortest possible notice. *Goodall v. Hess*, 315 Pa. 289, 172 Atl. 693, *Rhoads v. Herbert*, 298 Pa. 522, 148 Atl. 693.

Plaintiff was perfectly justified, having properly committed himself to the crossing, to proceed carefully and when he saw defendant's automobile approximately 50 to 70 feet away, traveling at approximately 10 to 15 miles per hour and decelerating its speed, in concluding that it was under control, in position to stop, and would stop in honoring his superior right of way. It is only in clear cases where a pedestrian is testing an obvious danger under circumstances which would cause a reasonable person to believe that the operator was not going to stop, or could not stop, that we may declare him guilty of contributory negligence. This case, put at its strongest for defendant, which we are not obliged to do in the light of the verdict, would be covered by *Aaron v. Strausser,* 360 Pa. 82, 87, 59 A. 2d 910 (1948), in which, speaking of a pedestrian, we quoted with approval: " 'Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.' " See also *Campbell v. Balis,* 380 Pa. 245, 110 A. 2d 254 (1955) where we said that "A pedestrian must exercise continued vigilance while crossing a street (Lorah v. Rinehart, 243 Pa. 231) ; *but just where he should look depends upon shifting conditions and is a question of fact rather than of law."* and our recent holding in *Frisina v. Dailey,* 395 Pa. 280, 150 A. 2d 348.

Defendant next contends that the court below erred in permitting the introduction into evidence of the trousers which plaintiff testified he wore at the time of the accident. At the trial one of the principal issues

was whether plaintiff was hit by defendant's left front tire or walked into the side of the defendant's car. It would appear that plaintiff put the trousers on clean the morning of the accident. After the accident he was hospitalized for 19 days. He did not prove where the trousers were kept in custody at the hospital but only that some time after his discharge he brought them to his counsel. At the time of trial they were received in evidence after the court had elicited the above facts and felt that the evidence of markings on the trousers could be submitted to the jury as evidence to show that plaintiff's trousers came into contact with defendant's automobile tire in corroboration of his own testimony. The defendant urges that there were inferences which could have been drawn other than that these markings were made by defendant's front left wheel or even that they were tire markings at all. The difficulty with this position is that such inferences go to the weight of the testimony and not to its admissibility. Clearly, it was for the jury to say, in connection with all the evidence presented that the left front wheel had come into contact with his leg whether the markings upon the trousers supported or negatived that testimony. *Fisher v. Pomeroy's Inc.*, 322 Pa. 389, 185 Atl. 296. It was well within the discretion of the trial judge to permit this testimony.

The judgment is affirmed.