Henry F. REUTER and Lois G. Reuter, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 80–135.

United States District Court, W. D. Pennsylvania.

March 24, 1982.

732

J. Alan Johnson, U. S. Atty., Craig R. McKay, Asst. U. S. Atty., for defendant.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DUMBAULD, District Judge.

Following a non-jury trial, the Court makes the following findings of fact and conclusions of law:

1. This is an action under the Federal Tort Claims Act of August 2, 1946, 60 Stat. 842, 28 U.S.C. 2671 *et seq.* as amended, for injuries sustained by a pedestrian by reason of collision with an automobile driven by Air Corps personnel. It is there provided (28 U.S.C. 2674) that "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances" [except for pre-judgment interest or punitive damages.]

2. In the case at bar, where the operative events took place in Pittsburgh, Pennsylvania within the Western District of Pennsylvania, this Court has jurisdiction under 28 U.S.C. 1346(b) and 28 U.S.C. 1402(b), and the tort law of Pennsylvania applies. However, because of the specific prohibition of pre-judgment interest in 28 U.S.C. 2674, such interest is not recoverable even though it would be permitted in Pennsylvania state courts [*Laudenberger v. Port Authority,* —— Pa. ——, 436 A.2d 147, 157 (1981) ] and is permitted in federal diversity cases not involving the United States as defendant, pursuant to *Jarvis v. Johnson,* 668 F.2d 740, 748 (C.A. 3, 1982).

3. The prerequisite of exhausting administrative recourse, as required by 28 U.S.C. 2675, has been duly complied with. On July 11, 1979, plaintiff submitted a demand for $250,000.00 for the husband plaintiff and $50,000.00 for the wife plaintiff, upon which the Air Force took no action within six months thereafter. Pursuant to § 2675(b) the amount recoverable is limited to the amounts so demanded. Pursuant to 28 U.S.C. 2402, the case was tried by the Court without a jury.

4. Pennsylvania tort law embodies "no-fault" provisions, 40 P.S. 1009.102 et seq., and the rule of comparative negligence, 42 P.C.S.A. 7102(a). Under the latter provision contributory negligence by plaintiff does not bar recovery unless it is greater than the negligence of defendant but damages sustained by plaintiff "shall be diminished in proportion to the amount of negligence attributed to the plaintiff." Under the no-fault provisions, any recovery of tort damages [§ 1009.301(a)(4) and (5) ] is to be diminished by the amount of benefits available under no-fault ($15,000.00) [§ 1009.-202(b)(2) ], and by the amount of workmen's compensation paid [§ 1009.206(a) ], which in the case at bar is $18,160.00.

5. Under present Pennsylvania tort law loss of future earnings or earning power is not to be reduced to present worth, *Kaczkowski v. Bolubalsz*, 491 Pa. 561, 583, 421 A.2d 1021 (1980), and is to be awarded in full without reduction for putative income tax thereon. *Girard Trust Corn Exchange Bank v. Phila. Transportation Co.*, 410 Pa. 530, 538, 190 A.2d 293 (1963).

6. The Pennsylvania motor vehicle code provides (75 P.C.S.A. 3542) that:

(a) When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection.

(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute a hazard.

It is also provided (§ 3361) that:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

7. At a recognized crosswalk the pedestrian has the superior right of way and motorists are required by the law to be highly vigilant and maintain such control of the vehicle that it can stop on the shortest possible notice. It is only in clear cases where a pedestrian is testing an obvious danger under circumstances which would cause a reasonable person to believe that the operator cannot stop or will not stop in honoring the superior right of way that the pedestrian is guilty of contributory negligence. *Smith v. Pittman*, 396 Pa. 296, 300–301, 152 A.2d 470 (1959).

8. Pennsylvania law permits recovery for consortium by the spouse of an injured victim. *Zagari v. Gralka*, 264 Pa. Super. 239, 246–47, 399 A.2d 755 (1979).

9. Under Pennsylvania law there is a presumption that a person who is killed, or by reason of trauma loses his memory, was acting with due care. *Kmetz v. Lochiatto*, 421 Pa. 363, 366–67, 219 A.2d 588 (1966).

10. Plaintiff, Henry F. Reuter, was born March 8, 1909, and was approximately ten days short of age 70 on February 2, 1979, the date of the incident involved in the case at bar. On that day Reuter, who had been active in and president of the Pittsburgh Athletic Association, in company with Al-

bert J. Luppino, manager of the club, traveled to the Nemacolin Inn, part of the former Rockwell estate on route 40 east of Farmington, in Fayette County where Luppino's advice regarding management of a golf course was desired. Plaintiff drove with Luppino from the P.A.A. to the Gateway garage where he left the car. The trip to and from Farmington was in a Nemacolin Inn vehicle. Around 5:30 p. m. after the return journey to Pittsburgh, the Nemacolin Inn vehicle dropped Reuter and Luppino off approximately in front of the Hilton Hotel, and drove away. The two men proceeded to a pedestrian crossing marked with white lines, intending to cross the street to the Gateway garage to retrieve the car.

11. The street at that point, an extension of Liberty Avenue connecting downtown Pittsburgh with the Fort Pitt Bridge and Tunnel, is a busy thoroughfare handling traffic to the airport, and to other major highways and destinations. There are three lanes each way at the point where the marked crosswalk from the Hilton to the garage is located. At the time there was a throng of people at a bus stop, and the two lanes of traffic nearest the curb were backed-up and standing still because of a traffic light ahead. The afternoon sun in the face of those driving westward toward the bridge added to the difficulty of travel.

12. Luppino and Reuter, proceeding at a normal pace, safely threaded their way through the two lines of traffic at a standstill, and proceeded into the third lane. Luppino was nearest to oncoming traffic, and Reuter was to his right, nearer to the bridge and tunnel. The third lane was free of traffic as they entered it.

13. Sergeant James Wesley Rowan, 13 years in the Air Force, was driving a 6-cylinder AMC Concord in the course of duty on his way home, proceeding westbound towards the bridge. At no time did he exceed the established speed limit of 25 miles per hour, but knew of the crowds of people at the site and the need for caution, because of his frequent use of this route during his four years in Pittsburgh. He was aware of the glare from the sun, and had the sun visor down. He did not see Luppino and Reuter until the moment of impact, at which time both men were in the crosswalk. Rowan stopped immediately and rendered assistance.

14. The Air Force vehicle, in the left lane, struck Luppino and propelled him into the plaintiff, who was thrown against the left rear fender of the car of John F. Howard, which was stationary in the middle lane of traffic. Plaintiff's head was under the front left hand door of Howard's car. Though Howard had his radio on he heard the screeching of brakes before feeling the thump. Getting out on the passenger side Howard saw papers and articles strewn on the ground, including plaintiff's false teeth at the left of his body. Luppino was pointed towards the garage, but was able to get up. Reuter was unconscious and removed to an ambulance on a stretcher. Howard's left rear fender had two dents, as well as a dent and scratch on his front door.

■ 15. Upon careful consideration of all evidence in the case in the light of the rules of Pennsylvania law discussed hereinabove in Nos. 4, 6, 7 and 9, we find and conclude that Rowan was negligent; and that Reuter was not guilty of any contributory negligence.

16. It is established by medical and other testimony that Reuter suffered concussion, pre-traumatic amnesia, leg injury requiring cast, crutches, and wheel chair; that his gait was impaired, and that his mental alertness and acumen are impaired, so that he is totally disabled, permanently, and unable to continue his business; and that his current impairment was caused by the accident. There is an unimportant conflict in the medical testimony as to whether the accident directly caused the impairment or triggered and aggravated a previously existing condition of loss of cortex cells which in course of time would result in degenerative senile dementia. The doctors agree that, absent the accident, Reuter would have been able to continue his business until approximately age 75. He was

business-oriented, and had no expectation of retiring.

■ 17. In 1978 plaintiff's earnings from the business were $80,000.00 ($30,-000.00 salary and $50,000.00 bonus). In 1979, the year of the accident, he received salary of $2,500 for the first three months plus bonus, or a total of $57,500.00. In 1980, he received only a $30,000.00 bonus. In 1981, he received the $30,000.00 bonus together with $12,000.00 for sale of the business, or a total of $42,000.00. Assuming the normal return is $80,000.00, the loss for the period 1979–81 would be the sum of $22,500.00. $50,000.00 and $38,000.00 or $110,500.00. Assuming the continuance in business until age 75, $240,000.00 additional would be added, making a total economic loss of $350,500.00. Pain, suffering, and inconvenience can fairly be assumed to increase the total damages to $375,500.00. Reducing this sum by $33,160.00 (see No. 4 *supra*) we come to the amount of Reuter's damages as $342,340.00, which must be reduced to $250,000.00 (see No. 3 *supra*.)

■ 18. The wife-plaintiff, Lois G. Reuter, had enjoyed an active social life, entertaining with grace and attractiveness in support of her husband's business affairs and contacts with clients. The accident and injuries affecting him transformed her into a nurse or caretaker. The diminution of income from the business "Reagonomized" her life-style by budget cuts, necessitating putting their home on the market at an asking price of $450,000.00. An award of $45,000.00 for loss of consortium seems fair.

19. For the reasons stated above, the Court, as trier of the facts, finds and awards, against the defendant United States of America, and in favor of the plaintiff Henry F. Reuter in the amount of $250,000.00 and in favor of the plaintiff Lois G. Reuter in the amount of $45,000.00. Judgment is entered accordingly.

### JUDGMENT

AND NOW, this 24th day of March, 1982, for the reasons set forth in the above findings of fact and conclusions of law,

IT IS ORDERED that judgment be and it hereby is entered against the defendant United States of America and in favor of plaintiff Henry F. Reuter in the amount of $250,000.00 and in favor of plaintiff Lois G. Reuter in the amount of $45,000.00.