DeMarco, Appellant, *v.* Rose.

Argued October 3, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

2

*Samuel Avins,* for appellant.

*J. Lawrence McBride,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 17, 1958:

It was nighttime and Joseph DeMarco, the plaintiff, was driving northwardly on Neville Street in Pittsburgh where it intersects with Bayard Street, which runs east and west. He stopped at the crosswalk and looked to right and left. No traffic was in sight and he moved forward cautiously at the rate of six miles per hour. When he got six feet into the intersection the lights of a car coming from the west 150 feet away flashed on and the car bore down on the intersection at some 60 miles per hour, striking the plaintiff's car broadside, demolishing it completely and inflicting serious injuries on the plaintiff. He recovered a verdict of $5500 at the ensuing trial.

The lower Court entered judgment n.o.v. on the basis that the plaintiff was guilty of contributory negligence. This appeal followed.

During the trial, the plaintiff was asked by defendant's counsel on cross-examination within what distance he could stop his car while travelling at the rate of 6 miles per hour. He replied: "I don't know. Just apply my brakes and would stop right there, but I mean to come out and say how many feet, I couldn't say that." This was undoubtedly an honest reply. He did not know how quickly he could stop under the circumstances and he so explained.

It is doubtful whether any average motorist could give a mathematically precise answer to the indicated question. However, the cross-examiner pursued his advantage, seeking now to have the plaintiff hazard an estimate of the stopping distance. The able Trial Judge warned the plaintiff that he did not need to answer the guess-searching interrogation. The plaintiff apparently ignored this advice and finally said that his "best estimate" was one foot. This became a foot in his mouth. After the jury returned a verdict in his favor, the Court en banc ruled that since he had said he could stop within a foot's distance and obviously he had not done so, he thus had convicted himself of contributory negligence with his own tongue.

While witnesses are to be held responsible for their replies, presumably given voluntarily and with full appreciation of their significance, a sense of fairness requires an analysis of the setting within which a certain answer was made in order to determine with precision the real import of the response. What is obviously a sheer guess, a speculative reply or a psychologically coerced estimate cannot be evaluated as a definitive, mathematical result worked out with engineering, algebraic, and geometrical precision.

A party litigant is not to be deprived of a jury's verdict simply because he has been badgered or unduly persuaded into an estimate of which he himself is frankly skeptical. An answer which floats in the atmosphere of unknown factors and consuming doubts is not enough to torpedo a verdict riding in a vessel of substantive and probative strength. It is common knowledge that motorists sometimes speak loosely of being able to "stop on a dime". But we know as a matter of reality that, despite the currency of this expression, it is impossible, at almost any speed, to stop within the diameter of our popular if little-purchasing ten cent piece.

The Superior Court has already observed that in appraising evidence of this character, something broader than a picayunish standard is to be applied (keeping in mind that the word picayune originally meant a coin). It is something less than just to apply the calipers of millimetric measurement to testimony which is the result of obvious broad gauge generalization. In the case of *Freedman v. Ziccardi,* 151 Pa. Superior Ct. 159, 163, the renowned President Judge of that Court, WILLIAM H. KELLER, sagely and justly observed: "We pay no attention to the *guess* of the plaintiff that he could have stopped his car in *two* feet. . . Most drivers have little or no knowledge as to the minimum distance an automobile will travel before it can be stopped. . . The *guesses* of uninformed drivers as to the distance within which they can stop a car are of no value whatever." (Italics in original Opinion.)

Again, in the case of *Holland v. Kohn,* 155 Pa. Superior Ct. 95, 101, President Judge KELLER said: "The testimony of the plaintiff as to the distance within which he could stop his truck was likewise only an estimate, not an incontrovertible physical fact on which to base a finding of contributory negligence as a matter

of law. . . We have, in another case, referred to the impropriety of basing judgments n.o.v., because of contributory negligence, on guesses or estimates of plaintiffs as to the distances within which they could stop their cars. . . Certainly, nothing testified to by the plaintiff by way of such estimate is such a fact as will justify a court in setting aside a verdict in his favor, which has reasonable basis of support in the evidence, considered in the light most favorable to him."

Even without any expert knowledge on the subject, it can most seriously be doubted that a motor vehicle travelling six miles per hour may be stopped within a foot's distance. In the first place, there must be taken into consideration the reaction time, namely, that period which elapses from the moment the brain conceives the necessity of stopping the car and the moment the muscular reflexes go into action. These two phenomena are by no means simultaneous. The Digest of Vehicle Code of Pennsylvania and Student's Manual (a publication of the Department of Revenue) declares that the reaction time is three-fourths of a second. It is sometimes also called "thinking distance." In the case of *Finnin v. Neubert,* 378 Pa. 40, 46, this Court approved the Digest here cited and pointed out that when a car is moving 20 miles per hour, its minimum stopping distance is 40 feet, "18 feet of which are travelled while thinking to apply brakes." Further that "in cases of emergency there is invariably momentary indecision on the part of the driver."

According to the "Digest," a car travelling at six miles per hour would move 6.6 feet in three-fourths of a second. It would accordingly follow that since DeMarco was already six feet within the intersection when he first saw Rose's car and moved 6.6 feet before he could take his foot off the gas and apply the brakes,

6

his car would be 13.6 feet within the intersection before it could be stopped. This would have brought him into the center of the intersection in the path of the defendant's car bounding forward at sixty miles per hour.

Is is, of course, axiomatic that in reviewing a factual situation we are required, on appeal, to read the evidence, where there is room for interpretation, in the light and evidentiary atmosphere most likely to give verification to the verdict. Under such a lamp, it is clear to us that the plaintiff here was confronted with that kind of a sudden emergency which excused him from the degree of prudence, wisdom, reflectiveness, and "fast thinking" which the post facto reviewer exercises as he leisurely studies the plan of the streets, the picture of the involved intersection, the testimony of the witnesses and then concludes, after the dust of the collision has settled, the screeching of the brakes has died away, and the injured have been taken to the hospital, how perfectly he could have acted in such a situation—retroactively.

As DeMarco approached the intersecting Bayard Street he was travelling at 25 miles per hour. He came to a dead stop and, being assured the streets were clear of traffic, he inched forward carefully. When he got beyond the building line the defendant's car, which evidently had been travelling without lights, suddenly flashed into existence. The plaintiff had observed all traffic rules, he was approaching the intersection from the right, he saw a car coming from his left at a high rate of speed. In the fragmentized fraction of an instant he had to decide what to do. He described his action as follows: "I might have watched it for about a split second, and then I tried to throw my gear into second, and whether I ever made second or not, I don't know, but the intention I had in mind

was to get on the other side so I would be out of his way." In that instant he was struck with such violence that the frame of his car crumpled. Whether he should have attempted to stop or go forward was the question of a lightning-formed decision. What would a reviewing judge have done in that sudden emergency? What would a reasonably prudent motorist have done in that fright-freighted moment when the abyss of sudden death yawned before him? This is the type of question which only a jury can answer. And the jury has answered. We cannot say, in the face of the jury's verdict, that it is inconceivable that a reasonably prudent person would have acted as DeMarco acted when the defendant, careening forward at 60 miles per hour in the middle of the night, did not put on his lights until he was 150 feet away from the plaintiff's car. Nor can we say that the plaintiff's conduct was such that it etched "a picture of such incontrovertible self-abandonment to negligence that 'fair and reasonable persons cannot disagree as to its existence,'" which is the standard of legally declared contributory negligence which we laid down in *Nugent v. Joerger*, 387 Pa. 330.

Reversed and judgment entered on the verdict.

Mr. Justice BELL dissents.